Miguel PINEDA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–01306–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 26, 1999.

Rehearing Overruled Oct. 7, 1999.

Brian W. Wice, Houston, for appellant.

John B. Holmes, Houston, Alan Curry, Houston, for appellee.

Panel consists of Justices COHEN, O'CONNOR, and WILSON.

## OPINION

WILSON, J.

A jury found appellant, Miguel Pineda, guilty of capital murder, and the trial court assessed punishment at life imprisonment. *See* TEX.PENAL CODE ANN. § 19.03 (Vernon 1994). On appeal, appellant complains of (1) ineffective assistance of counsel, (2) error during voir dire examination, and (3) improper argument by the prosecutor. We affirm.

**3**

## FACTS

In October 1995, the complainants, Cornelio Santibanez and his brother José Santibanez, were released on bond for the charge of the murder of appellant's brother, Antonio Pineda. On October 8, 1995, Cornelio and José went to a field in southwest Houston to play handball, and their brothers, Abraham Santibanez and Nico Santibanez, went along to watch. The Santibanez brothers regularly played handball at this particular field.

That evening, three or four gunmen entered the field by coming over a fence. Appellant was identified by an eyewitness as being one of the gunmen and as brandishing a shotgun. Appellant's brother, Ernesto Pineda, was identified as one of the gunmen accompanying appellant.

Appellant and Ernesto shot José Santibanez. Cornelio Santibanez ran in the direction of his vehicle when the shooting started; however, appellant was able to shoot Cornelio twice just before Cornelio got inside. Abraham Santibanez ran to his truck and got inside, but appellant was still able to shoot Abraham in his hand and in his leg. As the gunmen began to run away from the scene, Ernesto shot José several more times as José attempted to lift his head from the ground. After the shooting stopped, Tammy Cardenas saw appellant carrying a shotgun, getting into a vehicle, and leaving the area.

When Houston Police Officers James Hudkins and Tasha Herbar arrived at the handball field, they found several people running around in panic. The officers found Abraham, who told the officers that he knew the identity of the shooters and that one of them was appellant.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In point of error one, appellant contends he received ineffective assistance of counsel during the guilt-innocence stage of his trial because his counsel did not

secure the attendance of two alibi witnesses.

The standard of review for ineffective assistance of counsel during the guilt-innocence stage is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant seeking relief must demonstrate (1) that counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064–65, 2068; *Rodriguez v. State*, 899 S.W.2d 658, 664 (Tex.Crim.App.1995). A "reasonable probability" was defined by the Supreme Court as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Whether this standard has been met is to judged by "the totality of the representation." *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990).

Our review of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991). The burden of proving ineffective assistance of counsel is on the defendant and is one that requires proof by a preponderance of the evidence. *Id.* at 511 n. 1. Moreover, a defendant's right to effective assistance of counsel does not guarantee errorless representation, but instead affords the defendant counsel reasonably likely to render effective assistance. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App.1985). The review of counsel's representation indulges a very strong presumption that counsel's conduct falls within a wide range of satisfactory representation. *Davis v. State*, 930 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd).

Appellant contends his trial counsel provided ineffective assistance because counsel did not request subpoenas for two alibi witnesses, José Manual Galarza and José Baltazar. Appellant further contends that Baltazar's affidavit indicated Baltazar would have corroborated appellant's alibi defense.

Appellant's trial counsel, James Walker, executed three affidavits in support of appellant's motion for new trial. In his December 17, 1996 affidavit, Walker testified that his paralegal, John Zepeda, advised him that a friend of his, Mari Cruz Sierra, had a cousin named Miguel Pineda, who was charged with capital murder. Walker testified that he agreed to represent appellant. After being retained, Walker immediately sent Zepeda to Florida, where Zepeda contacted Baltazar. Baltazar indicated that he was ready and willing to come to Houston to testify for appellant.

Walker testified that when Zepeda returned to Houston, Zepeda reported that Pineda had a good alibi witness, José Baltazar, and that Baltazar was willing to come to Houston to testify. Baltazar claimed that appellant was with him in Miami, Florida at the time the murders took place. Baltazar and appellant were allegedly picking up Galarza, who is appellant's cousin and brother-in-law, at the Miami Airport. Zepeda was unable to interview Galarza, and Zepeda told Walker that Galarza was unavailable to testify at trial: "It was always represented to us that the cousin was unavailable for interview or testimony at trial...."

Zepeda also reported that members of appellant's family living in Florida would also come and testify. Walker believed that Baltazar was a very close family friend. Walker specifically asked Zepeda whether any of the Florida family members and Baltazar needed subpoenas, and

Zepeda told him that they were willing to come and testify without subpoenas. Walker testified that shortly after his first trip, Zepeda made a second trip to Florida and "reconfirmed the facts that he had obtained on the first trip," presumably including Galarza's unavailability. In July 1996, Sierra was murdered, which made it more difficult for Walker to maintain day-to-day contact with the Pineda family in Florida.

Walker testified when he learned of the October 17, 1996 trial setting, he had Zepeda contact the Florida witnesses. These witnesses "once again promised [Zepeda] that [they] would appear." Walker did not worry about lodging for these witnesses because the Pineda family lived in Houston until 1994 and still had family in town. The Florida family members and Baltazar never indicated that they would have trouble actually getting to Houston.

Shortly before trial, Walker received Baltazar's February 22, 1996 affidavit and a copy of an airline ticket stub.[1] Walker testified that "this further led me to believe that Baltazar would appear along with the family," suggesting that Baltazar had purchased a Miami–to–Houston airline ticket. Walker testified that on October 17, 1996, he picked a jury. "Mr. Zepeda and I were expecting the Pinedas to arrive any time. I felt sure that the witnesses would arrive. That was why I announced ready for trial because I felt certain that

the witnesses would arrive." On October 18, Zepeda spoke with a Florida family member, Gaudencio Pineda. Gaudencio told Zepeda that he, the rest of the Pineda family, and Baltazar would be in Houston on Tuesday, October 22, 1996, when the guilt/innocence phase of the trial began.

When Baltazar did not appear on October 22, Walker thought about moving for a continuance but did not do so because "I thought that they must be somewhere in route to Houston. I simply never dreamed that they would not appear at all." On October 23, 1996, Walker requested a short continuance to determine the location of the witnesses, which the trial court denied.[2] In his December 27, 1996 affidavit attached to the motion for new trial, Baltazar testified, "I have to say that the day that they say it was committed the crime [sic] in the City of Houston, Texas, he [appellant] was here [in Florida]. He went with me that same day of the crime to the Miami Airport to pick up a relative that was coming from Mexico."

Walker testified in his January 2, 1997 affidavit that he "had in fact intended to issue out-of-state subpoenas for Mr. Baltazar and for Gaudencio Pineda."[3] In his December 31, 1996 affidavit, Walker testified, "In retrospect out of town subpoenas should have been requested by me as I have done on other occasions." These statements negated any possible trial strategy Walker might have had in not requesting the subpoenas.[4]

1. In his December 27, 1996 affidavit Baltazar stated, "I was never told that the trial was going to be the week of October 21 and that I needed to be in Houston for it." This is inconsistent with Walker's testimony about Baltazar's February 22, 1996 affidavit and the airline ticket stub. The trial court, as fact finder, was free to resolve this inconsistency by doubting the testimony of Walker, Baltazar, or both.

2. *See generally* TEX.CODE CRIM.P.ANN. art. 29.06 (Vernon 1989) (when defendant requests continuance due to absence of witness, mere application for issuance of subpoena insufficient to show due diligence required by article 29.06); *Cooks v. State,* 844 S.W.2d 697, 725

(Tex.Crim.App.1992) (trial court's denial of motion for continuance so defendant can locate witness not abuse of discretion when defendant did not file pretrial application for subpoena); *Clark v. State,* 61 Tex.Crim. 597, 136 S.W. 260, 263 (1911) (motion for continuance properly overruled due to defendant's failure to show absent witnesses were served with subpoenas).

3. Appellant's motion for new trial does not complain about Walker not requesting a subpoena for Gaudencio Pineda.

4. We are aware that it is common practice for criminal defense attorneys *not* to request subpoenas for friendly witnesses. If counsel re-

Our review of the entire record leads us to conclude that appellant did not receive ineffective assistance of counsel. First, Walker did everything he could to ensure that the alibi witness, Baltazar, would be in attendance except request a subpoena for him.[5] Walker confirmed on at least four occasions that Baltazar and the Florida family members would be in attendance. He was told these did not need subpoenas and would voluntarily appear at trial. Walker's belief that Baltazar would voluntarily appear at trial was bolstered by the fact that Baltazar was a friendly witness and that shortly before trial, Baltazar sent a copy of his airline ticket stub to Walker. Second, the trial court could have disbelieved Baltazar's December 27, 1996 affidavit because it contradicted the evidence in Walker's affidavit that Baltazar knew about the trial date and planned to testify.

Appellant directs this Court to several cases to support his contention that he received ineffective assistance of counsel. *E.g* ., *Shelton v. State*, 841 S.W.2d 526 (Tex.App.—Fort Worth 1992, no pet.). In *Shelton*, the court held that Shelton received ineffective assistance because his counsel failed to call an alibi witness at the second trial who testified at his earlier trial. *Id.* at 527. The alibi witness executed an affidavit establishing that she was available to testify at the second trial, but that Shelton's counsel never contacted her. *Id.*

This appeal is distinguishable from the *Shelton* and the other cases appellant cites. In *Shelton*, there is no explanation as to why defense counsel failed to contact the alibi witness. *Id.* Here, there is a reasonable explanation offered by Walker as to the events surrounding the availability of Baltazar. Walker confirmed the Baltazar and the Florida family members's attendance on at least four occasions. This is not a case in which Walker failed to contact and call an alibi witness. Rather, this is a case in which the alibi witness promised to appear and testify at trial and counsel reasonably expected him to appear, but the witness nonetheless did not.

Appellant does not cite, and we are unaware of, any cases that hold counsel to be ineffective for failing to request a subpoena for a witness. As we noted earlier, there is a sound trial strategy for a criminal defense attorney to not request a subpoena for a friendly witness. Even though Walker effectively disavowed any trial strategy in not requesting subpoenas, we are unwilling to characterize as "error" Walker's belief in Baltazar's promise to appear, much less an action falling below an objective standard of reasonableness under prevailing professional norms.

Considering the facts of this case and the totality of Walker's representation, we conclude that appellant was not denied effective assistance of counsel. We overrule point of error one.

## VOIR DIRE EXAMINATION

■ In points of error two and three, appellant contends (1) the trial court erred in refusing appellant's request to instruct the jury panel to disregard a veniremember's remark that the newspaper "made it sound like [appellant] was guilty" and (2) the trial court erred in denying appellant's request to quash the jury panel after the prosecutor characterized a veniremember's speculation that appellant was guilty from what he had read in the newspaper as knowledge.

---

quests that subpoenas be issued, the State has pretrial access to the names and addresses of defense witnesses to which it would otherwise not be entitled. There is an obvious trial strategy in denying the State such valuable information.

5. Appellant's claim that Walker was ineffective for failing to request a subpoena for José Manual Galarza is meritless. The evidence presented at the motion for new trial demonstrated that Galarza was unavailable even to be interviewed by defense counsel, much less to testify at trial.

The following exchange occurred when the prosecutor asked the panel if any of them were familiar with the facts of the present case:

[STATE]: Yes, sir, No. 4, Mr. Hernandez?

PROSPECTIVE JUROR HERNANDEZ: What if I read about it in the newspaper about his case and heard on the TV about it, too?

[STATE]: Let me tell you this offense is alleged to have taken place on October 8, 1995, and it is alleged to have occurred at Summer Bell and the Southwest Freeway. If anybody here is familiar with the facts and it's going to cause you to be predisposed at this point to vote guilty or not guilty, you need to let us know.

A lot of times there are so many killings in Harris County and they are on the news and in the paper that a lot of you people come to court and you are already somewhat familiar with the facts of the case. That's okay. But can you set aside what you think, what you know about the facts of the case and only make your decision based upon what you hear from the witness stand?

Mr. Hernandez, you had indicated that you probably are familiar somewhat with the facts of the case.

PROSPECTIVE JUROR HERNANDEZ: I know about it.

[STATE]: Can you put whatever you believe you know aside?

PROSPECTIVE JUROR HERNANDEZ: What I read in the newspaper made it sound like he was guilty.

[STATE]: All right.

Oh, so what you read in the newspaper you believe that this person is guilty?

PROSPECTIVE JUROR HERNANDEZ: Also added information—

[STATE]: I don't want to interrupt you, but I do want to ask you not to let everybody else know what you know.

PROSPECTIVE JUROR HERNANDEZ: I wasn't going to—

MR. WALKER: Judge, we object to the prosecutor's characterization of these speculations as knowledge and we would ask for a new panel.

THE COURT: Your first objection is sustained. Your request for a new panel is denied.

MR. WALKER: I would also ask for an instruction.

THE COURT: That will be denied.

[STATE]: You have to be fair and impartial. And if you already have a preconceived idea that someone is guilty let us know because you can't be fair.

PROSPECTIVE JUROR HERNANDEZ: I don't think I could be fair.

[STATE]: Okay. And that's all we are asking for.

Walker never objected to Hernandez's statement and never specifically requested the trial court to instruct the prospective jurors to disregard that statement. Rather, Walker objected to the "prosecutor's characterization" and also requested "an instruction." This request for an instruction is ambiguous—was Walker asking for an instruction to disregard Hernandez's statement or an instruction to disregard the State's characterization of Hernandez's remarks as "knowledge"? Since the objection came immediately after Walker's objection to the State's comments, it seems more probable that Walker's request for an instruction was a request to instruct the jury to disregard the State's characterization. In order to preserve error for appeal, counsel must make a timely, specific request or objection. Tex.R.App.P. 33.1(a); *Espinoza v. State,* 955 S.W.2d 108, 115 (Tex.App.—Waco 1997, pet. ref'd). Here, the requested instruction was not "specific and clear enough to apprise the trial court of the nature of the [request]." *Pennington v. State,* 697 S.W.2d 387, 390 (Tex. Crim.App.1985). Inasmuch as Walker did not make a specific request for instruction,

**8**

he has not preserved for review any complaint about Hernandez's statement.

Accordingly, we overrule points of error two and three.

■ In point of error four, appellant contends the trial court erred in sustaining the State's challenge for cause to venireman Raul Ayala.

During the State's voir dire, the following exchange took place:

[STATE:] Let me go over a couple of other things that were discussed earlier by the Judge. Several of y'all raised your hands earlier and said that English is the language that you spoke as your second language, and for those of you who raised your hand earlier have any of you had any difficulty at all in understanding everything that's been discussed?

. . . .

[STATE]: Okay, Mr. Ayala, No. 3?

I probably destroyed that [Ayala's name].

PROSPECTIVE JUROR AYALA: Ayala.

[STATE]: Ayala.

Is there anything that you have missed?

PROSPECTIVE JUROR AYALA: Almost I got everything but I think, I don't know if I missed something.

[STATE]: I guess—what sort of job do you have? What kind—

PROSPECTIVE JUROR AYALA: Computers.

[STATE]: And do you primarily—when you are working do you discuss things in English.

PROSPECTIVE JUROR AYALA: No. Spanish.

[STATE]: What is the language you speak at home?

PROSPECTIVE JUROR AYALA: Spanish.

[STATE]: And as far as conversations that you may have with folks at your church or your neighbors, are those conversations carried on in English?

PROSPECTIVE JUROR AYALA: Spanish.

[STATE]: Spanish, all right.

You're going to hear a lot of testimony over the course of a few days next week. Do you think like you're not fluent enough in English to be able to perhaps weigh all the evidence that might be said on the stand because you can't speak the language fluently? I mean, you sound like you can.

PROSPECTIVE JUROR AYALA: Uh-huh. I am afraid I could miss some things.

The trial court granted the State's challenge for cause over the objection of appellant.

■ A juror who is unable to read or write may be stricken for cause. TEX.CODE CRIM.P.ANN. art. 35.16(a)(11) (Vernon 1989); *Rodriguez v. State*, 919 S.W.2d 136, 139 (Tex.App.—San Antonio 1995, no pet.), *disapproved on other grounds by Leday v. State*, 983 S.W.2d 713, 716–17 & n. 3 (Tex. Crim.App.1998). Article 35.16(a) requires the ability to read or write in English.[6]

---

6. *See Wright v. State*, 12 Tex.App. 163, 167 (1882) ("the words *'read and write'* employed in the statute must be held to mean an ability to read and write the English language"); *McCampbell v. State*, 9 Tex.App. 124, 125 (1880) ("The right of a defendant charged with felony to be tried by jurors who unders[t]and the English language is not an open question in this State.") (both cases interpreting Code of Criminal Procedure, 16th Leg., R.S., § 2, art. 636(14), 1879 Tex.Crim. Stat. n.p., 77 (former 1879 TEX.CODE CRIM.P.

art. 636(14), since repealed and recodified in 1895 (art. 673(14)), 1911 (art. 692(14)), 1925 (art. 616(14)), and 1965 (art. 35.16(a)(10))). In 1969, Code of Criminal Procedure article 35.16(a) was amended from "read and write" to "read or write." Act of May 13, 1969, 61st Leg., R.S., ch. 412, § 3, art. 35.16(a)(10), 1969 Tex.Gen.Laws 1364, 1365, *renumbered by* Act of May 5, 1983, 68th Leg., R.S., ch. 134, § 2, art. 35.16(a)(11), 1983 Tex.Gen. Laws 617, 620.

Here, Ayala testified that he spoke Spanish at home, work, and in his daily conversations. Ayala also advised the court that he was concerned that "he could miss some things." We conclude the trial court did not abuse its discretion in granting the State's challenge to prospective juror Ayala for cause.

We overrule point of error four.

■ In point of error five, appellant contends the trial court erred in permitting the State to voir dire the jury panel on an issue that was manifestly prejudicial and which bore no relation to any legal or factual issue affecting the case. The following exchange took place during the State's voir dire examination:

[STATE:] Anybody here know or are friends with or acquainted with anybody that's involved with a gang? And again, hypothetically.

First row?

. . . .

PROSPECTIVE JUROR HENDERSON: Yeah.

[STATE]: Oh, I am sorry. Mr. Henderson, in your relationship with these folks—we sometimes hear on TV and read in the newspaper that gangs, if there are witnesses to the crime they sometimes died—

PROSPECTIVE JUROR HENDERSON: Code of silence.

[STATE]: And they are going to go out and take care of business themselves.

MR. WALKER: Judge, we object to this line of questioning. May we approach the Bench?

(Whereupon, the following proceedings were had at the Bench outside the hearing of the entire jury panel as follows:)

MR. WALKER: Judge, we would object to any questioning about, even hypothetical questioning about gang relationships. It's highly prejudicial and there's no evidence, there's no evidence that there was gang involvement here. There may be revenge factors allegedly involved but no classical gang activity here.

[STATE]: Don't—I disagree. What I need to know is if any people would adhere to a code of retaliation as opposed to following the law.

MR. WALKER: If she wishes to phrase the question that way, I would not object, but the gang related question is highly prejudicial.

[STATE]: There's not going to be any evidence of gangs. It is a hypothetical and I need to know if there's any folks out there that would adhere to that sort of taking the law into your own hands.

MR. WALKER: Judge, she's already voir dired them on the issue of retaliation or taking the law into their own hands for—after being victimized, so I think it's repetitious.

I think the gang related question is inherently prejudicial.

[STATE]: My response is generally—you know, I need to know if there's anybody familiar with, close to or related in any shape, way, form or fashion with people who adhere to that philosophy, if it might affect them.

THE COURT: Well, you are already over time. I would ask it quickly.

And I will agree it's repetitious but I'm going to overrule your objection.

[STATE]: Thank you.

(Whereupon, the following proceedings were had in the presence and hearing of the entire jury panel as follows:)

[STATE]: I just want to go over the hypothetical situation with you again. You may know some folks out there that may adhere to the philosophy I'm going to take care of business myself, I am not going to help the police.

And, Mr. Henderson, do you know anybody like that? If so, what do you think about that philosophy and do you think you agree with that?

PROSPECTIVE JUROR HENDERSON: Yeah, I know people like that. And in certain circumstances, yeah, I do agree with them.

[STATE]: Okay.

Knowing that you agree with that philosophy in certain situations but the law doesn't, can you put that aside and can you follow the law? You don't get to decide when someone can get even.

PROSPECTIVE JUROR HENDERSON: Yeah, I can.

[STATE]: Okay.

. . . .

PROSPECTIVE JUROR: What was the question?

[STATE]: Okay, the question is basically this: Is there anybody here who is familiar with, knows or is acquainted with folks who may have a philosophy or a code, in a hypothetical case, in gangs, who have a code of silence if you witness an offense you don't say anything, you're going to go out and you take care of it yourself?

MR. WALKER: Judge, once again I object to the reference of gangs. There's no evidence of any gang involvement in this case.

THE COURT: All right, that's overruled. We are talking about a hypothetical situation here.

We are not talking about the facts of this case.

 A trial court has wide discretion to control voir dire. *Cadoree v. State,* 810 S.W.2d 786, 788 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). The decision of the trial court to allow or restrict voir dire may only be reviewed to determine whether the court's action constituted an abuse of discretion. *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Crim.App.1988). In determining whether the trial court abused its discretion, the reviewing court looks to the propriety of the question which is being asked. *Nunfio v. State,* 808 S.W.2d 482, 484 (Tex.Crim.App.1991). Generally, a question during voir dire is proper if it

seeks to discover a juror's views on an issue applicable to the case. *Id.* The law allows the use of a hypothetical to ascertain the views of the prospective jurors on issues pertinent to a fair determination of the case. *Atkins v. State,* 951 S.W.2d 787, 789 (Tex.Crim.App.1997).

In this case, the prosecutor's question was designed to discover whether the prospective jurors had a philosophy of retaliation or "taking the law into your own hands." This area of inquiry was important to the State because retaliation and revenge were issues in the instant case. In fact, a careful review of the question complained of reveals that the crux of the question concerned the "code of silence" and retaliation, not gangs or gang activity. We also note that the prosecutor and the court advised the panel that the question involved a hypothetical and that they were not discussing the facts of the present case. The mere mention of the word "gang" does not turn an otherwise proper hypothetical question into an improper one. Since the question posed by the prosecutor sought to discover a juror's views on an issue applicable to the present case, we conclude the trial court did not abuse its discretion in permitting the State to question the panel on this issue.

We overrule point of error five.

## IMPROPER ARGUMENT

 In points of error six and seven, appellant contends (1) the trial court erred in overruling appellant's objection after the prosecutor argued matters outside of the record during final argument and (2) the trial court erred in denying appellant's motion for mistrial after the prosecutor again argued matters outside of the record during final argument.

During her rebuttal argument in the guilt-innocence stage of the trial, the prosecutor argued to the jury as follows:

[STATE:] At some point, folks, it just seems that Houston is just flooded with

crime. I don't know what it is but we just seem—

MR. WALKER: I object to this as outside the evidence.

THE COURT: Overruled.

[STATE]: It's just flooded with crime. We are a breeding ground for violence. And I don't know that we are ever going to be able to fix it. I don't know that we will be able to cure it, but at least you can stop Miguel Pineda from doing it again, maybe.

MR. WALKER: We object, there's no evidence of any repetitiveness.

THE COURT: That's sustained.

MR. WALKER: Move for an instruction, Your Honor.

THE COURT: The jury will be instructed to disregard the last comment by the Prosecutor.

MR. WALKER: Move for a mistrial.

THE COURT: Overruled.

 The four permissible types of jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *McKay v. State,* 707 S.W.2d 23, 36 (Tex.Crim.App.1985); *Bias v. State,* 937 S.W.2d 141, 143 (Tex.App.—Houston [1st Dist.] 1997, no pet.). "To rise to the level of reversible error, jury argument must be extreme, manifestly improper, or inject new and harmful facts into evidence when viewed in the light of the record as a whole." *Dade v. State,* 956 S.W.2d 75, 81 (Tex.App.—Tyler 1997, pet. ref'd). A prosecutorial remark concerning the harm defendant may do to others in the future has been upheld as a proper plea for law enforcement. *Clark v. State,* 952 S.W.2d 882, 889 (Tex.App.—Beaumont 1997, no pet.); *see also Stone v. State,* 574 S.W.2d 85, 90 (Tex.Crim.App. [Panel Op.] 1978). We conclude that the prosecutor's statement was a proper plea for law enforcement. *See Long v. State,* 820 S.W.2d 888, 894–95 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) (argument "they don't do

it once" was proper reference to what might happen in future). It simply asks the jury to find appellant guilty to prevent any further criminal conduct.

 We also note that an instruction to disregard usually cures an objectionable argument "unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment." *Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Crim.App.1990), *overruled on other grounds by Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App.1994). Here, appellant requested and was given an instruction to the jury to disregard the prosecutor's remarks. We presume the instruction was sufficient to cure any harm. *Gardner v. State,* 730 S.W.2d 675, 696–97 (Tex.Crim.App.1987).

We overrule points of error six and seven.

## CONCLUSION

We affirm the trial court's judgment.

Justice O'CONNOR dissenting.

MICHOL O'CONNOR, Justice, dissenting.

I dissent from the panel's resolution of point of error one. In point of error one, appellant contends he received ineffective assistance of counsel during the guilt-innocence stage of his trial because his counsel did not secure the attendance of two alibi witnesses. I agree.

Appellant contends his trial counsel provided ineffective assistance because counsel did not request out-of-state subpoenas for two alibi witnesses, José Manual Galarza and José Baltazar.

Appellant's trial counsel, James Walker, should have issued subpoenas for the alibi witnesses, even though the witnesses promised to appear, and Walker thought they would appear without subpoenas. In fact, Walker admitted he should have issued subpoenas and that he meant to.

Walker testified that his failure to issue subpoenas was not a trial strategy.

The majority admits that Walker negated trial strategy as a reason for not requesting subpoenas. In spite of that, the majority says it is unwilling to characterize as "error" Walker's failure to issue the subpoenas. The question is: Why is the majority unwilling to find it was error when the attorney admitted it was error? It is hard to challenge reasoning that lacks reason.