Opinion issued January 13, 2005

 












In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00529-CR
   __________
 
SCOTT ALAN ZUNKER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 361st District Court
Brazos County, Texas
Trial Court Cause No. 28,688-361
 

 
 
 
OPINION ON MOTION FOR REHEARING
          We withdraw our Opinion of May 13, 2004 and issue the following Opinion
in its stead. We deny appellant’s motion for rehearing. Appellant, Scott Alan Zunker,
and his co-defendants,


 Valin Thomas Klock and Eric Vaughn Schultze, were
indicted for the first-degree felony offense of aggravated sexual assault of the same
complainant.


 After appellant refused to enter a plea, the trial court entered a plea of
not guilty on his behalf.


 The jury found appellant and his co-defendants guilty and
assessed punishments of 15 years in prison for appellant, 22 years for Klock, and 30
years for Schultze.
          In seven points of error, appellant contends that the trial court erred in (1)
denying appellant’s request for a severance, (2) excluding evidence concerning prison
conditions, (3) providing the jury with a general and ambiguous limiting instruction
in the punishment charge, (4) denying appellant’s motion for mistrial at punishment,
and (5) allowing improper closing argument. We affirm. 
Background
          On November 19, 2000, College Station Police Department Detective Chad
Harkrider was called to investigate the alcohol-related death of John Hickman at 3311
Bahia in College Station. When he arrived at the scene and discovered that there
were numerous people to interview, Harkrider contacted College Station Police
Sergeant Chuck Fleeger for assistance. Schultze and Klock were two of the people
interviewed in connection with Hickman’s death. During the course of the
investigation, Detective Harkrider received an anonymous tip that there was a
videotape of Hickman made on the night he died. 
          On March 27, 2001, Jana French, a friend of Klock’s, provided the College
Station Police Department with a videotape that she had obtained from Klock. 
Fleeger watched the videotape and discovered that, in addition to depicting Hickman
the night he died, 18 minutes and 45 seconds of the tape showed three men sexually
assaulting an unconscious female. Fleeger recognized Schultze and Klock as two of
the three assailants because he had recently interviewed them in connection with
Hickman’s death. He later determined the identities of the complainant


 and the third
assailant, appellant. 
          The sexual assault


 began with appellant and Schultze entering a room where
Klock was having sexual intercourse with the complainant, who appeared to be
unconscious and physically unable to resist. Schultze, while manning the video
camera said, “in her fucking cunt,” and appellant attempted to insert a baseball into
the complainant’s vagina. Appellant manned the video camera while Schultze
inserted the handle of a toilet plunger into the complainant’s vagina. Schultze told
appellant, “Make sure you get this on tape.” When the plunger handle was inserted
in the complainant’s vagina, she moaned and said, “Ow. Stop,” and continued to
struggle. The three men laughed throughout the entire sexual assault. At one point,
appellant lit a cigarette and burned the complainant’s vagina with the lit cigarette. 
Appellant then, mockingly, said, “Ow. That’s got to hurt,” and he proceeded to flick
ashes onto the complainant’s buttocks. Appellant and Klock also inserted a
screwdriver and other objects into the complainant’s vagina. The men continued to
laugh as they performed these various acts on the unconscious complainant, with
Schultze declaring, “this is fucking hilarious” at one point during the assaults. 
          Police officers arrested appellant, Klock, and Schultze the day after Sergeant
Fleeger received the videotape. Also on that day, police officers searched the house
at 3311 Bahia and found a video camera and a camera bag that contained another
videotape. This second videotape showed Schultze urinating on an unconscious
Hickman. 
          During his investigation, Fleeger determined that the sexual assault occurred
in July 2000, seven or eight months before the videotape was discovered.
Severance
          In points of error one and two, appellant argues that the trial court erred in
denying appellant’s motion for severance because (1) Klock had a prior admissible
conviction and (2) a joint trial was so prejudicial to appellant that he was denied a fair
trial at punishment.
          Severance is not a matter of right, but rests within the sound discretion of the
trial court. Peterson v. State, 961 S.W.2d 308, 310 (Tex. App.—Houston [1st Dist.]
1997, pet. ref’d). To show an abuse of discretion, an appellant bears the heavy
burden of showing clear prejudice. Id.
          A trial court must order a severance upon a timely motion and upon
introduction of evidence that establishes either (1) that there is a previous admissible
conviction against one defendant or (2) that a joint trial would be prejudicial to any
defendant. Tex. Code Crim.Proc. Ann. art. 36.09 (Vernon 1981); Aguilar v. State,
26 S.W.3d 901, 903 (Tex. Crim. App. 2000). Specifically, article 36.09 provides that:
Two or more defendants who are jointly or separately indicted or
complained against for the same offense or any offense growing out of
the same transaction may be, in the discretion of the court, tried jointly
or separately as to one or more defendants; provided that in any event
either defendant may testify for the other or on behalf of the state; and
provided further, that in cases in which, upon timely motion to sever,
and evidence introduced thereon, it is made known to the court that
there is a previous admissible conviction against one defendant or that
a joint trial would be prejudicial to any defendant, the court shall order
a severance as to the defendant whose joint trial would prejudice the
other defendant or defendants. 

Tex. Code Crim. Proc. Ann. art. 36.09.
          Generally, when two defendants are jointly indicted for the same offense, they
should be tried jointly. Dickerson v. State, 87 S.W.3d 632, 639 (Tex. App.—San
Antonio 2002, no pet.). However, the trial court may order separate trials, at its
discretion. Tex. Code Crim. Proc. Ann. art. 36.09. If a joint trial would prejudice
either defendant, upon proper motion to sever, the trial court must sever the trial of
the defendant whose joint trial could prejudice the other. Id. 
          The mere allegation that prejudice will result is not evidence of, or a sufficient
showing of prejudice, as required under article 36.09, particularly when the severance
is discretionary with the trial judge. Mulder v. State, 707 S.W.2d 908, 915 (Tex.
Crim. App. 1986). If no evidence is offered in support of the motion to sever, the trial
court does not err in overruling the motion. See Sanne v. State, 609 S.W.2d 762, 776
(Tex. Crim. App. 1980).
Klock’s Conviction
          In point of error one, appellant contends that the trial court erred and violated
article 36.09 when it denied appellant’s motion for severance because severance was
mandatory in that Klock had a prior admissible conviction and appellant did not.
          Appellant filed a pre-trial motion for severance, as well as a memorandum of
law in support of his motion to sever. Neither of these pleadings mentioned Klock’s
conviction.


 Both documents emphasized the prejudice appellant would suffer from
the Hickman videotapes, the potential for differing defenses between the co-defendants, and the differing levels of culpability. During the hearing on the motion
to sever, appellant admitted into evidence his prior criminal history, as well as those
of Klock and Schultze. Neither the exhibits nor their contents were ever discussed
during the hearing. At the conclusion of the hearing, the trial court asked the State
to submit a brief outlining its arguments opposing severance, and the trial court
afforded the defendants an opportunity to respond.
          In his reply to the State’s brief, appellant, for the first time, mentioned Klock’s
conviction for driving while intoxicated (DWI). The totality of appellant’s reply on
this point was as follows:
C. Prior Criminal Conviction
The State alleges there was never any evidence presented during the
severance hearing that any of the defendants have admissible prior
convictions. The State’s claim is false. During the severance hearing
the Defendant offered the criminal histories of himself as well as his co-defendants. In this exhibit it clearly shows that Valin Klock was
convicted for the offense of Driving While Intoxicated on September 22,
1998 in Comal County.
 
In its order denying the severance, the trial court stated that the defendants moved for
severance for several reasons including: the possibility of the introduction of separate
video sequence, antagonistic defenses, differing levels of culpability, and implication
through statements of co-defendants. Whereas, the State urged that the cases be tried
together because a single trial would lessen the trauma to the victim, a single trial
would reduce the chances of potentially disparate sentences, and judicial economy
would be best served with one trial. 
          The trial court found that “after a careful consideration of the evidence
presented at the pretrial hearing, and the arguments presented by counsel, it is the
opinion of the Court that defendants have failed to meet their ‘heavy burden’ showing
‘clear prejudice.’” Because none of the defendants raised the “prior conviction”
ground in his motion for severance, the trial court’s order addressed only the
prejudice factor, not the prior conviction factor.
          To preserve error for appeal, a defendant must (1) object, (2) state the grounds
with sufficient specificity, and (3) obtain an adverse ruling. Tex. R. App. P. 33.1; see
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Here, appellant
objected to a combined trial because of potential prejudice, not Klock’s prior
conviction; he did not make a specific enough objection because the trial court did
not make a ruling based on prior convictions, and finally, appellant did not obtain an
adverse ruling on the prior conviction issue. Appellant has not preserved error on the
denial of severance based on Klock’s prior conviction.
          We overrule point of error one.
Joint Trial Too Prejudicial
          In point of error two, appellant argues that the trial court abused its discretion
in denying appellant’s motion for severance because a joint trial was so prejudicial
to appellant that he was denied a fair trial at punishment. 
          Appellant was concerned that he would be prejudiced if he was forced to stand
trial with Klock and Schultze, and appellant’s attorney argued at the pre-trial
severance hearing that appellant and Klock had shown remorse, but Schultze had not. 
Appellant’s lawyer argued that appellant “might be punished or the bar might be
raised on his punishment because of the arrogance and the statements that are made
in the Schultze confession.” Further, appellant’s lawyer stated that he “viewed the
Hickman death as being more inflammatory than the actual facts of this case. . . . The
actions against Mr. Hickman, I fear, are going to rub off on my client and increase his
punishment.” 
          Appellant presented evidence of the criminal history and bad acts of both
Klock and Schultze. Appellant contended that the disparity between the criminal
history and bad acts of appellant and that of Klock and Schultze was “significant.” 
Appellant’s only “blemish” was that he had previously received deferred adjudication
community supervision for harassment of a neighbor. In contrast, Klock’s history
revealed convictions for (1) DWI, (2) DWI-second, (3) assault-bodily injury, (4)
possession of marihuana, (5) possession of controlled substance, (6) possession of
drug paraphernalia, (7) driving while license suspended, (8) reckless damage or
destruction of property, (9) disorderly conduct–noise, and (10) and (11) two failures
to appear. With respect to Schultze, the State presented the Hickman videotapes, in
addition to evidence that Schultze had previously harassed his neighbors, had
damaged a neighbor’s yard, had stolen a painting from the wall of a restaurant, had
a pending felony aggravated assault charge stemming from a fight with his ex-girlfriend’s boyfriend, and had been arrested for evading arrest after leading police
on a chase where speeds exceeded 100 miles-per-hour. 
          Appellant acknowledges that the trial court repeatedly instructed the jury not
to consider the Hickman videotapes and Schultze’s and Klock’s various
unadjudicated offenses as evidence against appellant. Despite having requested many
of the instructions, appellant now argues that “it is reasonable to conclude that the
greater the number of limiting instructions given to the jury the greater the likelihood
of confusion and unfair prejudice.” He asserts, as stated by the Dallas Court of
Appeals, that there is a “limit to the number of times a skunk can be thrown into the
jury box with instructions not to smell it.” See Young v. State, 752 S.W.2d 137, 145
(Tex. App.—Dallas 1988, pet. ref’d). 
          During its opening statement at punishment, the State informed the jury that the
Hickman videos were “offered to show you something about Eric Schultze.” 
Sergeant Fleeger testified that neither appellant nor Klock was present on the
Hickman videos. The record is replete with instructions from the trial court
informing the jury not to consider the evidence presented against the other defendants
when deciding appellant’s punishment. Where the jury sentenced Schultze to 30
years in prison, Klock to 22 years in prison, and appellant to only 15 years, there is
no indication that the jury was unable to follow the trial court’s instructions. 
          We hold that appellant has failed to meet his heavy burden of showing that the
trial court abused its discretion when it found that appellant did not show clear
prejudice would result from a joint trial. See Peterson, 961 S.W.2d at 310. 
          We overrule point of error two.
Erroneously Excluded Evidence
          In points of error three and four, appellant argues that the trial court erred
during the punishment stage of the trial in excluding evidence concerning prison
conditions because such evidence was relevant and admissible to rebut the false
impression created by the State.
          We review a trial court’s decision to admit or exclude evidence for abuse of
discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). Where
the trial court’s evidentiary ruling is within the “zone of reasonable disagreement,”
there is no abuse of discretion, and the reviewing court must uphold the trial court’s
ruling. Id. All relevant evidence is admissible, except as otherwise provided by
Constitution, by statute, by the rules of evidence, or by other rules prescribed
pursuant to statutory authority. Tex. R. Evid. 402. Evidence is relevant if it tends
to make the existence of any consequential fact more or less probable than it is
without the evidence. Tex. R. Evid. 401. However, after the defendant has been
found guilty, evidence may be offered by the State and the defendant “as to any
matter the court deems relevant to sentencing.” Tex. Code Crim. Proc. Ann. art.
37.07 § 3(a)(1) (Vernon Supp. 2004-2005).  
          The erroneous admission or exclusion of evidence does not result in reversible
error unless it affects a substantial right of the accused. See Tex. R. App. P. 44.2(b);
Alexander v. State, 137 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2004, pet.
ref’d). Substantial rights are affected when the error has a substantial and injurious
effect or influence in determining the jury’s verdict. King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997). 
          During the punishment stage, appellant’s attorney called Reginald Jenkins as
a witness. Jenkins is a detention officer with the Brazos County Sheriff’s
Department, and he was previously employed as a prison guard at a maximum
security prison. Jenkins testified that appellant had been a “model inmate” during his
more than 300 days of detention at the time of trial. Jenkins explained what a normal
day is like for appellant while in detention, and that, due to his conviction for
aggravated assault, he cannot become a prison trustee.     Klock’s attorney questioned
Jenkins about the conditions in maximum security prisons. Jenkins testified that it
was “very possible” that the defendants would be going to a maximum security
prison, which holds murderers, major drug dealers, embezzlers, and forgers. He
further testified that there is “rampant gang affiliation” in prison. 
          On cross-examination, the State elicited more testimony regarding the
conditions in prison. Jenkins testified that rigid laws regulate prisons to make sure
they are safe. Prison units have job fairs and classes allowing inmates to get degrees
ranging from G.E.D.s to Ph.D.s, and law libraries that are second to none. Prison
units also have exercise weights, baseball diamonds, basketball courts, and
horseshoes. Each prison unit has a minimum of two televisions in each dayroom, and
inmates are allowed to see the National Basketball Association finals and the Super
Bowl on television.
          On re-direct examination, Schultze’s attorney asked Jenkins if he felt it would
be helpful to hear from someone who “was actually on the inside looking out.” 
Jenkins responded, “possibly.”
          Later, appellant’s attorney called Leroy Hall to testify about the time that he
served in the Texas Department of Corrections from 1990-1997. The State objected
that the testimony from Hall concerning prison conditions was irrelevant. Appellant’s
attorney responded that the State had “opened the door to the country club
atmosphere,” and the trial court originally agreed. When the State added that the
witness was an expert, who had not been properly designated, the trial court overruled
that objection as well.
          After appellant’s attorney asked Hall a few more questions, the trial court
began sustaining the State’s relevance and invading-the-province-of-the-jury
objections. The trial court then discussed the rulings with the attorneys outside the
presence of the jury and reconsidered and sustained the State’s relevance objection. 
The defendants’ attorneys made a bill of exception, and, at the conclusion of the bill,
the trial court clarified that Hall’s testimony was inadmissible, and the court
instructed the jury to disregard it. The trial court stated that it based its decision on 
401, the relevance. I’m also basing my decision on the fact that I did not
believe the door was opened by the State. Number three, I’m making
my decision on the fact that . . . I still think 701 and 702 may apply and
there should have been a notice given that this person was an expert
witness.

On appeal, appellant contends that (1) Hall’s evidence was necessary to rebut a false
impression left by the State about prison life, (2) Hall was not an expert, and (3)
Hall’s testimony was relevant because the State had “opened the door.” 
          The Court of Criminal Appeals has explained that, under article 37.07 section
3(a), the admissibility of evidence at the punishment phase of a non-capital felony
trial is a function of policy rather than relevancy. See Mendiola v. State, 21 S.W.3d
282, 285 (Tex. Crim. App. 2000); Miller-El v. State, 782 S.W.2d 892, 895 (Tex.
Crim. App. 1990). This is so because, by and large, there are no discrete factual
issues at the punishment stage. Miller-El, 782 S.W.2d at 895-96. Thus, determining
what is “relevant” in regard to punishment, under article 37.07 section 3(a), “should
be a question of what is helpful to the jury in determining the appropriate sentence
in a particular case.” Mendiola, 21 S.W.3d at 285. In Schielack v. State, 992 S.W.2d
639 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d), when faced with the attempt
to introduce similar evidence to that which was attempted to be introduced here, the
Fourteenth Court of Appeals held as follows:
In the present case, the testimony which [Schielack] sought to introduce
was neither [evidence of the circumstances of the offense itself or the
defendant himself]. In fact, the testimony consisted of another person’s
experiences in prison. There is no evidence that [Schielack’s]
experience would be the same. As such, we believe that the trial court’s
decision to exclude this testimony was at least within the zone of
reasonable disagreement; therefore, the trial court did not abuse its
discretion. 

Id. at 642-43. 
          Appellant argues that Schielack is not instructive because it was distinguished
by the Waco Court of Appeals in Najar v. State, 74 S.W.3d 82 (Tex. App.—Waco
2002, no pet.). In Najar, Warden Botkin did not give testimony in the form of an
opinion, lay or expert. See id. at 86 (citing Tex. R. Evid. 701, 702). She was never
asked to express an opinion. Id. Thus, she was a fact witness whose testimony was
challenged solely on the basis of its relevancy. Id. Najar stated that Schielack
is distinguishable from the present case because Botkin testified that
inmates similarly-situated to Najar—same offense, no history of
violence or aggression, no behavioral problems while
incarcerated—would be placed into “minimum custody” and be
immediately eligible for all appropriate prison programs; prison
overcrowding is not an obstacle to expeditious placement into programs. 
Therefore, the warden’s testimony was not merely speculative as to
Najar. Furthermore, Schielack did not hold that evidence about prison
conditions is per se irrelevant; Schielack stands only for the principle
that its relevancy depends on the facts and circumstances of the case.

Id. at 87. We agree with Najar’s characterization of the holding in Schielack. We do
not, however, agree that Najar is more instructive than Schielack in this case. 
          During the defendants’ bill of exception, Hall testified, at length, about the
consequences of being “fresh meat” in prison. After the recitation, appellant’s
attorney and Schultze’s attorney asked Hall to comment as to whether each of the
defendants would be treated as “fresh meat.” Appellant’s attorney asked appellant
to stand and then asked Hall, “What about a white male that’s never been to prison
before that’s his size and weight. Is he going to be considered fresh meat or not?” 
Schultze’s attorney then asked Schultze to stand, and he asked Hall, “Are the things
that you said pertaining to Mr. Zunker . . ., would that go for Mr. Schultze as well?” 
Hall responded, “Yes. It will go for anybody that goes into the system that’s never
been there before.” Hall’s testimony was describing prison life as he had observed
it several years before, rather than present prison life that was described by the
warden in Najar. 
          The trial court could have reasonably concluded that Hall’s testimony would
not have been helpful to the jury in determining the appropriate sentence in this case. 
Also, the trial court could have reasonably concluded that Hall’s testimony went
beyond the scope of any door opened by the State. Under the precedent of Mendiola,
the trial court’s decision to exclude the testimony of Hall was at least within the zone
of reasonable disagreement.
          Accordingly, we hold that the trial court did not err in excluding his testimony. 
Having held that the trial court did not err in excluding Hall’s testimony, we need not
determine whether Hall was a properly designated expert.
          We overrule points of error three and four. 
Jury Instruction
          In point of error five, appellant argues that he suffered egregious harm because
a limiting instruction regarding the extraneous offenses of Schultze in the court’s
charge at punishment was so general and ambiguous that it failed to limit the jury’s
consideration of evidence in assessing punishment to Schultze as the person against
whom the evidence was admitted.
          When a complaint is raised on appeal regarding error in the trial court’s charge
to the jury, a reviewing court must determine whether the charge was erroneous, and,
if so, whether the error was harmful to the defendant. See Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984). The State may offer evidence of
extraneous offenses during the punishment phase of the trial. Tex. Code Crim. Proc.
Ann. art. 37.07 § 3(a)(1). The trial court, as it did here, must charge the jury that it
can only consider such evidence if it finds beyond a reasonable doubt that the
defendant committed the offenses. See Huizar v. State, 12 S.W.3d 479, 483-84 (Tex.
Crim. App. 2000).
          Here, the trial court’s charge, at punishment, contained the following
instruction:
You are further instructed that any act or acts which have been
introduced against any defendant in this case can only be used against
that defendant in determining his punishment and can not be considered
by you in determining the punishment of any other defendant. 

Appellant did not object to this instruction. Now, however, he complains that the
instruction was so general and ambiguous that it failed to limit the jury’s
consideration of evidence in assessing punishment to Schultze as the person against
whom the evidence was admitted.
          Appellant acknowledges, that, because he did not object to the instruction when
given to the jury, he must establish that he suffered egregious harm due to the
instruction. See Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994);
Almanza, 686 S.W.2d at 171. Appellant contends that he suffered egregious harm
because the jury instruction was too vague and general to prevent the jury from
considering the Hickman videos against appellant when assessing punishment.
          Assuming, without deciding, that there was error in the instruction, appellant
has failed to show that he did not receive a fair trial. See Almanza, 686 S.W.2d at 171
(holding that appellant must show erroneous charge caused egregious harm
preventing fair and impartial trial). The jury saw the Hickman videos and heard
testimony from several witnesses that appellant was not involved or present during
the filming of either episode. Appellant has presented nothing to show that the jury
considered the Hickman videos against him because of the absence of a more specific
instruction. 
           We overrule point of error five.
 Jury Argument
          In point of error six, appellant argues that the trial court erred in denying his
motion for mistrial when the State argued to the jury at punishment that “they had
watched their best friend die” because there was no evidence that appellant was even
present at the time of Hickman’s death. In point of error seven, appellant contends
that the trial court erred during the punishment stage of trial in overruling appellant’s
objection to the State’s closing argument about a matter outside the record.
          The law provides for, and presumes, a fair trial, free from improper argument
by the State. Long v. State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). Proper
jury argument generally must encompass one of the following general areas: (1) a
summation of the evidence presented at trial; (2) a reasonable deduction drawn from
that evidence; (3) an answer to the opposing counsels argument; or (4) a plea for law
enforcement. Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); Sandoval
v. State, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). To
determine whether a party’s argument properly falls within one of these categories,
we must consider the argument in light of the entire record. Sandoval, 52 S.W.3d at
857. In most cases, if error occurs, an instruction to disregard will cure any error
committed. Shannon v. State, 942 S.W.2d 591, 598 (Tex. Crim. App. 1996).
Motion for Mistrial
          During closing argument at the punishment stage, the prosecutor stated that
“These three Defendants need to be held accountable for the total and continued
disregard for life and for the law. They had chances. They’ve been in trouble before. 
They watched their best friend die of a drug and alcohol overdose.” The trial court
sustained appellant’s objection and instructed the jury to disregard the last statement,
but denied the motion for mistrial.
          At almost every mention of the Hickman videotapes throughout the trial, the
trial court instructed the jury that the evidence introduced against one party cannot
be considered against any other party. The jury saw the Hickman videotapes and
heard testimony describing who was present during the filming of the videotapes. 
          We presume the instruction was sufficient to cure any harm. See Gardner v.
State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987); Pineda v. State, 2 S.W.3d 1, 11
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). Once again, appellant has shown
nothing to the contrary. 
          We overrule point of error six.
Outside the Record
          In point of error seven, appellant contends that the trial court erred in
overruling appellant’s objection after the State argued matters outside the record
during its final argument in the punishment stage of trial.
          During closing argument at the punishment stage, the State argued:
Imagine the embarrassment, the humiliation that [the complainant] has
had to go through. Every time you think about the excuses the
Defendants offered, think about [her], what she’s going through, what
her parents are going through, what her dad is thinking knowing that his
little girl was violated in the worst way.

The trial court overruled appellant’s objection that the State’s argument was outside
the record. Appellant argues that this statement was a direct violation of the trial
court’s ruling on a motion in limine “that the State’s attorney not mention or state to
the jury the probable testimony of any witness who is absent or unavailable and was
not called to testify in this cause.” 
          The complainant’s parents did not testify; therefore, the argument was outside
the record, and the trial court erred in overruling appellant’s objection. Appellant
concedes that “arguments which are outside the permissible bounds of jury
summation are not constitutional errors and thus are subject to the harm analysis
established by Tex. R. App. P. 44.2(b).” Rule 44.2(b) provides that a
nonconstitutional error “that does not affect substantial rights must be disregarded.” 
Tex. R. App. P. 44.2(b). Determining harm under that standard in improper argument
cases requires balancing the following three factors: (1) severity of the misconduct
(prejudicial effect), (2) curative measures, and (3) the certainty of
conviction/punishment absent the misconduct. Id.; Mosley v. State, 983 S.W.2d 249,
259 (Tex. Crim. App. 1998).
          Severity of the Misconduct
          In Martinez v. State, 17 S.W.3d 677 (Tex. Crim. App. 2000), the Court of
Criminal Appeals was faced with a similar issue when it was asked to reverse a death
penalty conviction in light of the following jury argument at the conclusion of the
punishment stage of trial: 
PROSECUTOR: And based on this evidence, this--this rates as one of
the worst crimes, one of the worst killings not only in Brazoria County
but the State of Texas. 
 
DEFENSE COUNSEL: Objection, your honor. That’s not in the record. 

THE COURT: Stay in the record, counsel. 
 
PROSECUTOR: The evidence shows you, these were execution
killings. 26 to 28 bullets. The family of the murdered victims, the
family–the victims themselves, they cry out to you, for the death penalty
in this case. There’s no more–
 
DEFENSE COUNSEL: Objection, your Honor. Not in the record,
either. Absolutely no evidence of that. 
 
THE COURT: Overruled. 
 
PROSECUTOR: Justice in this case requires you, because we told you
from day-one, what we wanted was a fair jury, a jury that would do
justice in this case. 

Martinez, 17 S.W.3d at 692. The court concluded that 
the degree of misconduct, if any, was relatively mild in the present case. 
The prosecutor’s comment that the victims and their families cry out for
the death penalty appears to be intended as a plea for law enforcement. 
The jury was in a position to know that victims who are dead cannot
presently cry out for the death penalty, and that, given the facts
surrounding their deaths, no such cries were made before they died. Nor
would the jurors be surprised to hear that the victims’ families would be
upset with appellant or that they would want retribution. And the
prosecutor did not attempt, through this argument, to convey any
specific facts about the effect of the victims’ deaths upon their families. 
Instead, the prosecutor was pleading with the jury to give the death
penalty because the record before the jury showed that the defendant
deserved it. To the extent that the prosecutor conveyed facts outside the
record, such facts had no tendency to adversely influence the jury
against appellant beyond the influence exerted by a wholly legitimate
plea for law enforcement.

Id. at 693 (emphasis added). Here, like in Martinez, the prosecutor’s comments did
not attempt to convey specific facts about the effect of the complainant’s assault upon
her family so much as it was conveying matters that the jury would not be surprised
to hear because they are obvious or common knowledge. Accordingly, we conclude
that the degree of misconduct was minimal.
          Curative Measures
          The trial court did not make any attempt to cure the misconduct.
          Certainty of Punishment Absent the Misconduct
          Appellant was found guilty of the first-degree felony offense of aggravated
sexual assault—an offense punishable by imprisonment for life or for a term of not
more than 99 years or less than 5 years. See Tex. Pen. Code Ann. § 12.32 (Vernon
2003). If a jury sentences an individual to less than 10 years, it may recommend to
the trial court that the imposition of the sentence be suspended and that the defendant
be placed on community supervision. Tex. Code Crim. Proc. Ann. art 42.12, § 4(a),
(d)(1) (Vernon Supp. 2004-2005). Here, the jury assessed punishment at 15 years in
prison. To evaluate the “certainty of the punishment absent the misconduct,” we must
examine all the evidence presented during punishment.
                    State’s Witnesses
          The jury saw the videotape of Hickman taken shortly before his death. 
Sergeant Fleeger testified that neither appellant nor Klock was present in the
Hickman video. Fleeger and Detective Harkrider both testified that appellant,
Schultze, and Klock were not peaceful, law-abiding citizens, and that they have bad
reputations in the community. 
          Karen Rogers, who lived next door to the Bahia house, testified that she was
“afraid to go outside” when Schultze was outside.


 She reported that, at 7:50 a.m. on
December 15, 2000, Schultze yelled at her as she tried to get in her car to go to work. 
He yelled, “I hate my cock-sucking fucking cock-sucking neighbors and that they
were all cock-suckers,” and he threw a beer bottle at her. Rogers called the police,
and Schultze told her that “he was going to be [her] worst nightmare” until she moved
out. Tim Rogers, Karen’s husband, went outside and confronted Schultze and, during
the confrontation, Tim accused the residents of the Bahia house of failing to take care
of their friend who died. Appellant, who had walked up while Schultze and the
Rogerses were arguing, threatened to kill Tim. 
          Police Officer David Robinson responded to Karen Rogers’s call to the police. 
He testified that he took appellant’s and Schultze’s statements, and he did not believe
that either of them was intoxicated when the threat to kill Tim Rogers was made. 
Appellant received deferred adjudication for the incident.
                    Defense Witnesses
          As previously discussed, the jury heard from Brazos County Sheriff
Department Officer Reginald Jenkins. In addition to testifying about prison
conditions discussed above, Jenkins testified that he has had contact with appellant 
10 to 14 times a day during the year he has been incarcerated awaiting this trial. 
Jenkins testified that appellant “is an extremely quiet person, stays to himself, rarely
comes out of his cell.” He said that he has had no problems with appellant and, to the
extent that there is such a thing, appellant has been a model prisoner. Jenkins
testified that appellant did not take advantage of the drug and alcohol abuse treatment
program that was available to the inmates. 
          The jury heard testimony from Mike Patterson, the assistant chief of the
College Station police department, concerning the events surrounding the threat that
appellant made to Tim Rogers. Patterson testified that he attempted to ask appellant
questions, but Schultze would answer for him. Patterson separated appellant from
Schultze and questioned him about the confrontation. Appellant explained that Karen
Rogers had said something about his friend who had died, and “that got him mad.” 
Appellant told Patterson that he “never swore” at Tim Rogers. When he was asked
if he felt appellant lied to him, Patterson responded, “I felt like he was (sic) wasn’t
fully truthful. I wasn’t sure he was trying to be super deceptive, but I think he felt
that he was in a bad place.” Patterson testified that appellant pleaded guilty after
being charged with threatening Tim Rogers.
          Appellant testified during punishment that he remembered “growing up at the
bar” with his father. His parents were divorced, and he lived with his father until his
father’s girlfriend took appellant’s money from him. He moved back in with his
mother, but he rebelled against her rules. He started drinking alcohol as a sophomore
in high school and was getting intoxicated every weekend by his senior year in high
school. During high school, he was arrested for minor in possession and public
intoxication. He was living in Vernon, Texas with his mother and visiting Eric
Schultze’s brother in College Station when this sexual assault occurred. He later
moved to College Station. Appellant testified that he “looked up to” Schultze and
was in awe of him because he “partied hard, drank a lot of beer.” Appellant explained
that there were “a lot of good-looking girls always around him.” Working at the bars
gave appellant access to alcohol any time he wanted. Appellant testified that there
was no doubt that Schultze was the “leader” of the Bahia house. Schultze would do
things to exercise control over the group. For example, appellant had a friend come
in town to visit, and Schultze assaulted him in the parking lot outside the bar. On
another occasion, after appellant had been arrested, but before he was on probation,
he stopped going out “partying” with Schultze. Schultze would call him and tell him
that he was a “pussy for not coming drinking with them and stuff.” 
          Appellant remembered that, on the night of the sexual assault, they went
bowling and “drank a lot of beer.” Appellant then drove to the Blarney Stone where
they stayed and drank “a lot more” even after the bar closed. They left around 4 a.m. 
He does not remember how he got to the Bahia house, and he remembers parts, but
not all of the events of the evening. He remembered walking in and seeing Klock on
top of the complainant and “the part about the baseball and cigarette.” He
remembered waking up on the couch hung over and knowing that something bad had
happened. He left the Bahia house and drove home to Vernon, Texas the day after
the assault. Appellant expressed remorse for the part that he played in the assault and
stated that has accepted God into his life and he prays that God would take away the
night that this assault happened.
          On cross-examination, appellant admitted that, in the video, it appears that he
inserted the screwdriver in the complainant’s vagina. He testified that he had no
memory of that portion of the video. He also agreed that, on the video, it appeared
that he was trying to “get [the baseball] into her vagina.” He further agreed that they
were looking for things in the room to insert in the complainant’s vagina. Finally,
appellant admitted that there was no question in his mind that the Bahia house
neighbors were “terrorized” by them.
          Next, Ryan Miller testified that she dated appellant for one month. She
testified that, despite having shared the same bed with him, appellant never forced
himself on her, and she was shocked to hear that he had been arrested for this assault.
          Brandon Caddell testified that he had known appellant since the sixth grade. 
Appellant “stood up for what he believed in and didn’t let anybody push him around.” 
Brandon’s father is a pastor, and appellant regularly attended church with them. 
Brandon described appellant as a “sweet talker” to girls and “a big teddy bear.”
          Stephen Caddell, a pastor in San Antonio and Brandon’s father, told the jury
that appellant was a well-manned and polite boy who met Caddell’s approval. He
testified that appellant had leadership potential.
          Cheryl Quernner, appellant’s mother, testified that appellant was 10 when she
and appellant’s father got divorced. Appellant comes from a family of people with
drinking problems, and he would get intoxicated in high school. Appellant has a need
to be accepted and he will try to fit in to whatever group he is with. The jury heard
that “all of [appellant’s] girlfriends, past girlfriends are still very close to [him]. . . . 
The girls have nothing but good things to say.” Quernner testified that appellant
would not let his family visit him in jail—he was too embarrassed. She said that he
had been transformed while in jail and had real remorse so she believed that he could
succeed on probation.
          Brooke Bolton testified that she has known appellant since eighth grade. She
has been intoxicated around him, and he has never taken advantage of her. She
described appellant as her friend, and she “love[s] him to death.”
          Sabre Bofannon testified that she has known appellant for about six years. She
described appellant as “a real outgoing person. He’s a real friendly guy. He’s overall
a really nice guy.” She testified that she had been “intimate” with appellant, and he
was never forceful or aggressive, and he always respected her when she said, “no.” 
She described to the jury how appellant’s personality changed when he moved to
College Station. He “was more worried about what his friends thought here [in
College Station] than about us. He just wasn’t the same person.”
          Lastly, Marvin Sharp testified that his son and appellant were friends. 
Appellant stayed over at the Sharp house in Vernon a lot, and appellant had excellent
manners, was well-behaved, and polite and respectful to Sharp and his wife. He
described appellant as a “follower.” Appellant dated Sharp’s niece, and Sharp never
heard any problems about that relationship. Appellant had a key to the Sharp’s house,
and they found him to be “quite trustworthy.” 
                    Rebuttal Witnesses
          Sergeant Fleeger testified again and stated that, “based on the heinousness of
the crime” and his “knowledge . . .[of] arrests of the Defendants before and after their
arrests for this case,” he did not believe the defendants deserved probation. He
acknowledged that he had never recommended probation as a witness, but believed
that sometimes it is appropriate.
          Here, the jury heard testimony from 10 of appellant’s witnesses. They all
testified that appellant came from a troubled home, but was a good guy and a
follower. In addition, the jury saw videotape evidence of appellant engaging in truly
barbaric behavior—the sexual assault of an unconscious young woman—by Schultze
inserting a toilet plunger handle in her vagina and his suggesting that appellant and
Klock force a baseball in her vagina, while Schultze manned the video camera. The
videotape also showed appellant burning the complainant’s vagina with a lit cigarette,
and then, mockingly, said, “Ow. That’s got to hurt,” before he flicked ashes on the
complainant’s buttocks. The videotape also showed appellant and Klock inserting
a screwdriver blade into the complainant’s vagina. Appellant’s misconduct was
further emphasized by his laughter at the complainant during the assault, while
Schultze declared that this was “fucking hilarious.” The jury also heard testimony
from several policemen who testified that the defendants were not law-abiding
citizens.
          Taking all of the evidence into consideration, and in light of our holding that
the argument did not constitute severe misconduct, we hold with fair assurance that
the trial court’s error in overruling appellant’s objection to the above argument did
not influence the jury and did not affect his substantial rights.
          We overrule point of error seven.
Conclusion
          We affirm the judgment.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.
 
Justice Jennings dissenting.

Publish. Tex. R. App. P. 47.2(b).