**Erica Diana NAJAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–00–307–CR.**

Court of Appeals of Texas,
Waco.

March 20, 2002.

Rehearing Overruled May 29, 2002.

Stan Schwieger, Law Office of Stan Schwieger, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., James Wiley, McLennan County Asst. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Erica Diana Najar was accused of "intentionally or knowingly" causing serious bodily injury to a toddler by scalding her, a first-degree felony. TEX. PEN.CODE ANN. § 22.04(a), (e) (Vernon Supp.2002). Najar was near her eighteenth birthday at the time of the crime. She pled the "insanity" defense. *Id.* § 8.01 (Vernon 1994). A jury convicted her of a lesser-included offense: "reckless" injury to the minor, a second-degree felony. *Id.* § 22.04(a), (e). It rejected her plea for community supervision and assessed punishment at thirteen-and-one-half years in prison.

Najar raises two issues on appeal, both pertaining to the punishment phase of the trial:

1. The trial court should not have allowed a prison warden to testify about inmate classifications and prison rehabilitative programs.[1]
2. The trial court should not have admitted into evidence gruesome photographs of the victim's injuries.

We will affirm the judgment.

### *Issue One*

■ During the punishment phase, the State called Nancy Botkin, warden at the Hilltop Unit, a prison for females, to testify about the inmate classification system and prison programs. Before she did, Najar objected that her testimony was irrelevant because it did not specifically apply to Najar. The court overruled the objection. Botkin testified:

- She had worked for the prison system for nineteen years. She had been a warden for the last five years. Before that, she worked in "classification, Social Services" for ten years.

- New inmates are initially placed into a diagnostic process for four to six weeks, where their medical, psychological, and drug-dependency conditions are assessed.

- When inmates are assigned to a prison, an individual treatment plan is drawn up by a team.

- Inmates are initially placed into "maximum custody." Later, if it is determined that they are not displaying aggressive or assaultive behavior, and have a good disciplinary record in the past while in custody, they are placed into "minimum custody which is the best." Classification is based on behavior, not the crime of conviction. Those convicted of injury to a child are classified in this way.

- "[The prison system] has gotten away from warehousing. It is [the] goal to rehabilitate and give everyone some social skills, and some job skills so when they are released, they are released a better person, a better citizen."

- The prison system has its own school district, Windham Independent School District, which meets the same stan-

---

1. In her statement of this issue, Najar also refers to the warden's testimony about prison conditions and violence in prison; but the warden did not specifically testify about these matters on direct examination, there was no objection about them at trial, and they were not briefed on appeal. TEX.R.APP. P. 33.1.

dards as all Texas school districts. The educational program includes vocational training.

- There is a class, available to inmates, called "Changes" which focuses on anger management, parenting, job searching, and job skills.
- Inmates can attend college-level classes and earn up to a masters degree.
- For inmates with a substance-abuse problem or a psychological problem, there is appropriate counseling.
- A Chaplain's Program provides mentoring for inmates while in prison, and acts as a resource for reintegration into the community on release.
- There is a youthful-offender program for those ages fourteen to twenty-one.
- There are special programs for sex offenders, inmates with long sentences, and other specific groups.

On cross-examination, Warden Botkin said:

- Prison crowding is not a factor in whether an inmate has access to a program. Each prison has a set number of beds and an appropriate number of staff to run the programs for that number of beds. When a prison is full, inmates are kept in the diagnostic process until there is an empty bed. Those doing less time enter the school system sooner; otherwise, length of time does not play a factor.
- Prison is not an ideal place in which to grow up. Younger inmates could pick up bad habits from others.
- Females are kept in dormitories, not in cells, unless they are violent, aggressive, or a predator.
- There are violent people in prison, but they are kept apart from other inmates.

On re-direct examination, Botkin testified that the prisons are at 96% to 98% capacity, and 90% of inmates "never receive a major case, and never get in a fight, never have a glimpse of violence on a daily basis."

We review the admission of evidence for whether there is an abuse of discretion, *i.e.*, whether the trial judge's decision lies "within the zone of reasonable disagreement." *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App.1996) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g)). The trial court must first determine if the evidence is relevant under Rule 401. *Id.*; Tex.R. Evid. 401. If so, the evidence is admissible unless forbidden by a constitutional provision, a statute, or a rule. *Rankin*, 974 S.W.2d at 718; Tex.R. Evid. 402. If the evidence was admissible for any purpose, we will sustain the ruling even if that purpose was not asserted at trial and even if the court gives the wrong reason for admitting the evidence. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App. 1997) (not asserted); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990) (wrong reason).

Warden Botkin did not give testimony in the form of an opinion, lay or expert. Tex.R. Evid. 701, 702. She was never asked to express an opinion. Thus, she was a fact witness whose testimony is challenged solely on the basis of its relevancy.

Section 3(a) of article 37.07 of the Code of Criminal Procedure allows evidence during the punishment phase about "any matter the court deems relevant to sentencing." Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2002). Generally, "relevant" evidence during the punishment phase is that which is "helpful to the jury in determining the appropriate sentence." *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App.2000) (quoting

*Rogers v. State,* 991 S.W.2d 263, 265 (Tex. Crim.App.1999)). However, the definition of "relevant" from Rule of Evidence 401 is "not a perfect fit in the punishment context." *Rogers,* 991 S.W.2d at 265. Specifically, "relevant" evidence in the punishment context is that which helps the jury "tailor the sentence to the particular offense" and "tailor the sentence to the particular defendant." *Id.* The type of evidence that is "relevant" in helping the jury "tailor the sentence" is not determined logically in the way "relevance" is decided under Rule 401 concerning whether the evidence tends to make the existence of a fact more or less probable; rather it is determined by the Legislature as part of its policy-making function. *Id.* (citing *Miller–El v. State,* 782 S.W.2d 892, 895–96 (Tex.Crim.App.1990)). The Legislature's policies about punishment can be found, *inter alia,* in objectives found in the Penal Code, including "insur[ing] the public safety through ... the rehabilitation of those convicted of violations of this code ..., [and] prescrib[ing] penalties that are proportionate to the seriousness of offenses and that permit recognition of differences in rehabilitation possibilities among individual offenders...." *Id.* at 265–66; Tex. Pen.Code Ann. § 1.02(1)(B), (3) (Vernon 1994). A defendant who is eligible may ask the jury to recommend community supervision in lieu of imprisonment. Tex. Code Crim. Proc. Ann. art. 42.12, § 4 (Vernon Supp.2002). If the jury so recommends, the court must place the defendant on community supervision. *Id.* Therefore, the Legislature has, as a matter of policy, expressly made community supervision a relevant issue at the punishment phase in a jury trial.

■ Najar argues that the warden's testimony about inmate classification and rehabilitative programs is not relevant because it was speculative as to her, *i.e.,*

there was no evidence about what her classification would be or what programs she might participate in, if any. The State responds that the evidence was helpful to the jury in determining (1) whether community supervision was appropriate, and, if not, (2) what term in prison to assess.

To support her argument, Najar cites *Schielack v. State,* which held that the defendant could not offer testimony from a third-party about that person's experiences in prison. *Schielack v. State,* 992 S.W.2d 639, 641–42 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The court reasoned that, because there was no evidence Schielack's prison experience would be like the third-party's, the testimony was irrelevant. *Id.* However, *Schielack* is distinguishable from the present case because Botkin testified that inmates similarly-situated to Najar—same offense, no history of violence or aggression, no behavioral problems while incarcerated—would be placed into "minimum custody" and be immediately eligible for all appropriate prison programs; prison overcrowding is not an obstacle to expeditious placement into programs. Therefore, the warden's testimony was not merely speculative as to Najar. Furthermore, *Schielack* did not hold that evidence about prison conditions is *per se* irrelevant; *Schielack* stands only for the principle that its relevancy depends on the facts and circumstances of the case.

As an additional argument, Najar relies on the decision in *Brown v. State,* in which the Court held that the defendant could not introduce information about the operation of the community supervision department and the rules and regulations of community supervision. *Brown v. State,* 741 S.W.2d 453, 455 (Tex.Crim.App.1987). The Court said allowing this testimony "would make it logically consistent to admit testimony offered by the State concerning the administrative procedures and

rehabilitative programs practiced by the Texas Department of Corrections," which in turn "would allow an escalating 'battle of the experts' to develop. Whatever probative value this testimony would have is far outweighed by the danger that it would prejudice or confuse the trier of fact." *Id.* Here, the evidence the State offered is exactly of the kind rejected by the Court in *Brown.* However, we cannot reconcile *Brown* with *Mendiola* and *Rogers.* We note that *Brown* was decided before the phrase "any matter the court deems relevant to sentencing" was added to section 3(a); the previous version was, by its express terms, narrow as to what evidence was allowed. In addition, the Houston court recently declined to apply *Brown,* finding instead that a defendant is not prohibited by statute or rule from offering evidence of suitability for community supervision. *Peters v. State,* 31 S.W.3d 704, 712–20 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *Reed v. State,* 48 S.W.3d 856, 860 (Tex.App.-Texarkana 2001, no pet.) (concurring with *Peters's* broad interpretation of section 3(a)).

 Under *Mendiola* and *Rogers,* we hold that when a jury may grant community supervision, which by its nature offers a defendant a "second chance" and an opportunity for rehabilitation without having to serve time in prison, then evidence about the prison inmate-classification system and any rehabilitative opportunities offered in prison may be relevant because it is helpful to the jury in "tailoring" the sentence.[2] *See Rogers,* 991 S.W.2d at 265–66. For example, if the defendant is a youthful first-time offender, the jury might believe the offense would normally merit imprisonment, but the detrimental effects of that experience on a young person might override the impulse

for retribution and compel community supervision; information about rehabilitation in prison would be helpful in resolving that issue. Of course, if the State introduces evidence of the inmate-classification system and rehabilitative programs, the defendant must be allowed, as here, to cross-examine the State's witnesses and to present other evidence contradictory to the State's evidence.

Our holding comports with other courts of appeals' decisions giving a broad construction to section 3(a). *E.g., Muhammad v. State,* 46 S.W.3d 493, 505 (Tex. App.-El Paso 2001, no pet.) (Psychological expert testimony on the defendant's suitability for community supervision is admissible because "the legislature intend[ed] [under section 3(a) ] the widest sweep of relevant evidence to be considered by the jury in determining punishment."); *Peters,* 31 S.W.3d at 712–20 (*infra* suitability for community supervision); *Taylor v. State,* 970 S.W.2d 98, 102–03 (Tex.App.-Fort Worth 1998, pet. ref'd) ("[T]he plain language of [section 3(a) ] supports a broad interpretation in favor of the admissibility of all relevant extraneous offense evidence, unless the probative value of the evidence is substantially outweighed by its prejudicial effect."); *Mendiola v. State,* 924 S.W.2d 157, 164 (Tex.App.-Corpus Christi 1995, pet. ref'd, untimely filed) (Victim-impact statements in a non-capital murder case are permissible under section 3(a), which grants the trial court "broad discretion" in admitting evidence.); *Mock v. State,* 848 S.W.2d 215, 225 (Tex.App.-El Paso 1992, pet. ref'd) (As a consequence of the amendment to section 3(a), the trial court was granted "wide latitude" in the admission of evidence, including testimony from the State's witness that the defendant did not have "rehabilitative quali-

---

**2.** We do not, however, reach the State's argument that such evidence is also relevant when

the only question before the jury is what term of imprisonment to assess.

ties."); *Coy v. State*, 831 S.W.2d 552, 554 (Tex.App.-Austin 1992, remanded) (Unadjudicated extraneous offenses are admissible under section 3(a), because by adding "any matter the court deems relevant to sentencing" to the section, the "legislature established a policy of full disclosure at sentencing.").

We conclude that the warden's testimony about the inmate-classification system and rehabilitative programs is not *per se* irrelevant, and the trial court's decision to admit it is within the "zone of reasonable disagreement." We overrule issue one.

### Issue Two

■■■■■ During the punishment phase, the State proffered three photographs of the victim taken while she was in the hospital. Najar objected that the photographs were overly gruesome and violated Rule 403. TEX.R. EVID. 403. The trial court overruled the objection. The admissibility of a photograph is within the discretion of the court and is reviewed for abuse of discretion. *Kelley v. State*, 22 S.W.3d 642, 644 (Tex.App.-Waco 2000, no pet.). And we will not find error in a trial court's Rule 403 ruling unless the ruling falls outside "the zone of reasonable disagreement." *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992) (citing *Montgomery*, 810 S.W.2d at 391).

■■■■■ When a trial court conducts a Rule 403 balancing test regarding a photograph, it must first determine if the photograph is probative of some relevant fact. *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim.App.2000). In general, evidence that has a bearing on the defendant's personal responsibility and moral guilt is admissible during the punishment phase. *Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex.Crim.App. 1991); *Miller–El*, 782 S.W.2d at 897. This includes evidence of the degree of harm inflicted on the victim. *E.g., Stavinoha*, 808 S.W.2d at 79 (Evidence is admissible

of the psychological harm done the child-victim and his mother by the sexual abuse of the defendant.); *Miller–El*, 782 S.W.2d at 896 (Evidence is admissible of the future hardship on the victim rendered a paraplegic by the defendant's act of attempted capital murder.). Here, the three photographs depict the nature and extent of the injuries by showing them from various angles as the child lay, attached to medical apparatus, in a hospital bed. They were relevant.

■■■■■ Next, the trial court must decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Salazar v. State*, 38 S.W.3d 141, 151 (Tex.Crim.App. 2001). Some factors the court should consider are "the number of photographs, the size of the photograph, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment." *Reese*, 33 S.W.3d at 241; *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim.App.1999). The photographs are three-by-five inch glossy color pictures from various angles showing the child lying unclothed in a hospital bed. The scald burns are prominent. The photographs are gruesome and might be prejudicial. However, similar and larger photographs were introduced during the guilt-innocence phase of trial. Considering the *Reese* factors, and that similar pictures admitted during the guilt-innocence phase lessened any jarring visual impact, we find that the court did not abuse its discretion in determining that danger of any unfair prejudicial effect did not substantially outweigh

the photographs' probative value.[3] TEX.R. EVID. 403.

We overrule issue two.

### Conclusion

The trial court did not abuse its discretion in admitting, over a relevancy objection, the testimony of a warden who was called by the State at the punishment phase to refute the defendant's plea for community supervision and who testified about the inmate classification system and prison rehabilitative programs. The court did not err in ruling that three photographs of the victim's injuries were relevant to punishment issues, nor that the danger of any unfair prejudice from them did not substantially outweigh their probative value. Finding no error, we affirm the judgment.

---

3. Even if admitting the photographs had been error, the error would be harmless. We will not reverse for evidentiary errors that do not affect substantial rights. TEX.R. EVID. 103(a); TEX.R.APP. P. 44.2(b). Considering all the evidence, including similar photographs introduced during the guilt-innocence phase, and the probable impact the photographs had on the jury, we do not believe admitting the photographs affected the sentence.