IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00307-CR

 

A’Drana Gooden Johnson,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2003-1274-C

 



Opinion



 








          A jury convicted A’drana Gooden Johnson
of aggravated assault for shooting her husband Wayne and assessed her
punishment at eleven years’ imprisonment and a $10,000 fine.  Johnson contends
in four points that the court erred by: (1) excluding evidence that Wayne had
committed violent acts against a former spouse; (2) permitting the State to
impeach her on a collateral matter first raised by the State; (3) admitting
evidence at punishment regarding her admission to a hospital after the guilty
verdict and regarding her conduct in jail once discharged from the hospital;
and (4) failing to submit a reasonable doubt instruction with regard to
evidence of extraneous conduct offered at punishment.  We will affirm.

Prior Violent Acts

          Johnson contends in her first point
that the court abused its discretion by excluding evidence that Wayne had committed acts of violence against a former spouse.  The State responds that
Johnson failed to preserve this issue for appellate review.  We agree with the
State.

          Rule of Evidence 103(a)(2) provides
that, if the trial court excludes evidence, a party may not complain of that
ruling on appeal unless “the substance of the evidence was made known to the
court by offer, or was apparent from the context within which questions were
asked.”  Rule of Appellate Procedure 33.1(a)(1)(A) further requires the
complaining party to “state[ ] the grounds for the ruling that the complaining
party sought from the trial court with sufficient specificity to make the trial
court aware of the complaint, unless the specific grounds were apparent from
the context.”  “Additionally, it is well settled that the legal
basis of a complaint raised on appeal cannot vary from that raised at trial.”  Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

          Thus, preservation of error with
regard to the exclusion of evidence involves a two-step process: (1) informing
the trial court of the substance of the evidence sought to be admitted; and (2)
informing the trial court of the legal grounds for the admission of the evidence. 
See Willover v. State, 70 S.W.3d 841, 845 n.4 (Tex. Crim. App. 2002) (“Whichever
party complains on appeal about the trial judge’s action must, at the earliest
opportunity, have done everything necessary to bring to the judge’s attention
the evidence rule in question and its precise and proper application to the
evidence in question.”) (quoting 1 Steven
Goode et al., Texas Practice: Guide to the Texas Rules of Evidence §
103.2 (3d ed. 2002)).

          Here, Johnson sufficiently advised the
trial court of the substance of the evidence she sought to admit when her
attorney explained that he wanted to question Wayne about an allegation from a prior
divorce proceeding that Wayne “had struck [his former wife] and had hit her in
the stomach.”

          With regard to advising the trial
court of the legal basis for admitting this evidence however, Johnson’s
appellate argument does not comport with her trial theory.  At trial, Johnson
argued that this evidence was admissible under article 38.36 of the Code of
Criminal Procedure.[1] 
On appeal, Johnson argues that the evidence is admissible to show that the
complainant was the first aggressor.  See Torres v. State, 117 S.W.3d
891, 894 (Tex. Crim. App. 2003).

          Because Johnson’s theory of
admissibility on appeal is different than the theory of admissibility she
pursued in the trial court, she has failed to preserve this issue for appellate
review.  See Heidelberg, 144 S.W.3d at 537.  Accordingly, we overrule
Johnson’s first point.

Impeachment on Collateral Matter

          Johnson contends in her second point
that the court abused its discretion by permitting the State to present
evidence of the reason Johnson was terminated from a former job because this is
a collateral matter first raised by the State.

          “When a witness is cross-examined on a
collateral matter, the cross-examining party may not then contradict the
witness’ answer.  A matter is collateral if the cross-examining party would not
be entitled to prove that matter as part of his case tending to establish his
plea.”  Shipman v. State, 604 S.W.2d 182, 183-84 (Tex. Crim. App. [Panel
Op.] 1980) (citations omitted).  Conversely, 

when a defendant voluntarily testifies as to his
prior criminal record without any prompting or maneuvering on the part of the
State’s attorney and in so doing he leaves a false impression with the jury,
the State is allowed to correct that false impression by introducing evidence
of the defendant’s prior criminal record.

 

Martinez v. State, 728
S.W.2d 360, 362 (Tex. Crim. App. 1987); cf. Lopez v. State, 928 S.W.2d
528, 531-32 (Tex. Crim. App. 1996) (evidence of prior misconduct inadmissible
because State had prompted or maneuvered defendant into leaving false
impression about his prior criminal history).

          Thus, it has been held that “when a
defendant voluntarily or nonresponsively testifies concerning extraneous
matters on cross-examination, the State may correct any false impression
presented by such answer.”  Roberts v. State, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d); accord Mills v. State, 847 S.W.2d
453, 456-57 (Tex. App.—Eastland 1993, pet. ref’d); Burrow v. State, 668
S.W.2d 441, 443 (Tex. App.—El Paso 1984, no pet.).

          Here, the State presented testimony
that the handgun with which Johnson shot Wayne had been stolen in November 2001. 
 Wayne testified that Johnson acquired the handgun “while she was working at
the pawnshop” but that she did not purchase it “through the pawnshop.”

          During the State’s cross-examination
of Johnson, the prosecutor asked her when she worked at the pawnshop.  She
replied that she worked there “when [she] first got married” to Wayne.[2] 
When asked how long she worked there, she replied, “Maybe two months, three
months until my husband—they got kind of upset because my husband would be on
my job every day.”  The prosecutor asked Johnson four additional questions
about her statement that Wayne was the reason she lost her job.  The prosecutor
then asked her whether she bought the handgun in the pawnshop parking lot so it
wouldn’t be traced to the pawnshop.  Johnson denied this.  After this, the
prosecutor moved on to another line of questioning.

          In rebuttal, the State called the
pawnshop owner to testify about the reason Johnson’s employment was
terminated.  The owner testified over objection that Wayne came to the store
only twice, that he never caused any problems at the pawnshop, that he had
nothing to do with the termination of Johnson’s employment, and that Johnson’s
employment was terminated because she declined to do all the “chores” assigned
to her.

          Johnson contends that the State’s
cross-examination of her focused on a collateral matter (the termination of her
employment at the pawnshop) and was intended to prompt or maneuver her into
leaving a false impression with the jury about the reason her employment was
terminated.  The State responds that the cross-examination was a proper attempt
to connect Johnson to the handgun and that the pawnshop owner’s testimony was
properly admitted because Johnson voluntarily and nonresponsively testified
about the reason her employment was terminated without prompting or
maneuvering.

          We agree with Johnson that the State’s
cross-examination could be construed as an effort to maneuver her into
leaving a false impression about the reason her employment with the pawnshop was
terminated.  The fact that the prosecutor asked Johnson four additional
questions in an apparent attempt to solidify her testimony on this admittedly
collateral matter lends further support to this interpretation.

          However, the record also supports the
State’s assertion that this line of questioning was an attempt to connect
Johnson to the handgun used in the crime.  This line of questioning began with
the testimony of the person from whom the handgun had been stolen.  It
continued with Wayne’s testimony that the handgun did not belong to him and
that Johnson had obtained it while working at the pawnshop, though not “through
the pawnshop.”  Finally, the State established through cross-examination of
Johnson that she worked at the pawnshop at about the same time the handgun was
stolen, though she denied purchasing it.

          We will affirm a trial court’s
evidentiary ruling if it lies within “the zone of reasonable disagreement.”  See State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).  We have
identified two reasonable interpretations of the State’s purposes for
cross-examining Johnson about her employment at the pawnshop.  The latter
interpretation represents a wholly appropriate line of inquiry, relevant to the
issue of whether the handgun belonged to Johnson, which is ultimately relevant
to the issue of whether Wayne first threatened Johnson with the handgun or
whether she was the first to employ deadly force.

          Under this interpretation of the
evidence, the State was not attempting to prompt or maneuver Johnson into
testifying about the termination of her employment at the pawnshop, and Johnson’s
response was voluntary and nonresponsive to the prosecutor’s question.  Thus,
we cannot say that the trial court’s decision to permit the State to impeach
Johnson regarding this matter lay outside “the zone of reasonable
disagreement.”  See Roberts, 29 S.W.3d at 601; Mills, 847 S.W.2d
at 456-57; Burrow, 668 S.W.2d at 443.  Accordingly, we overrule
Johnson’s second point.

 

Punishment Evidence

          Johnson contends in her third point
that the court abused its discretion by admitting evidence at punishment
regarding her admission to a hospital after the guilty verdict and regarding
her conduct in jail once discharged from the hospital.

          Article 37.07, section 3(a)(1) of the
Code of Criminal Procedures provides for the admission during the punishment
phase of 

any matter the court deems relevant
to sentencing, including but not limited to the prior criminal record of the
defendant, his general reputation, his character, an opinion regarding his
character, the circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404
and 405, Texas Rules
of Evidence, any other evidence of an extraneous crime or bad act
that is shown beyond a reasonable doubt by evidence to have been committed by
the defendant or for which he could be held criminally responsible . . . .

 

Tex. Code
Crim. Proc. Ann. art.
37.07, § 3(a)(1) (Vernon Supp. 2005).

          Here, the court admitted evidence that Johnson
was found in a park and taken to a local hospital on the same morning that the
punishment phase of her trial was scheduled to begin.  She was treated at the
emergency department and returned to the jail.  The treating physician
testified that she appeared nonresponsive when she was brought in by
ambulance.  He ran a series of tests and concluded that there was nothing wrong
with her and that she was malingering.

          Johnson was placed under observation
in the jail.  A jailer testified that, on the morning her punishment phase was
to recommence, he came to her cell to notify her that she needed to get ready. 
A few moments later when he was observing her on a video monitor to be sure she
did not fall, he saw her get up from her bed, walk across the cell to a sink,
brush her teeth, then return to the bed without assistance.

          Another jailer testified that, when he
brought a wheelchair to transport Johnson to the courtroom, she nearly fell as
she tried to get into the wheelchair.  A female jailer and he had to dress Johnson
because “[s]he couldn’t do anything.”  This jailer concluded by testifying
that, after Johnson was taken by wheelchair to a room near the courtroom, she
was able to walk into the courtroom without any assistance.

          Johnson filed an application for
community supervision.  Evidence of her willingness to comply with court orders
(i.e., to appear in court as scheduled) is relevant to the issue of
whether she would comply with community supervision orders.  See Najar v.
State, 74 S.W.3d 82, 87-88 (Tex. App.—Waco 2002, pet. dism’d) (evidence of
suitability for community supervision is relevant when the defendant has filed
an application for community supervision); Peters v. State, 31 S.W.3d 704,
719 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d) (same).

          Accordingly, we hold that the court
did not abuse its discretion by admitting evidence regarding Johnson’s
hospitalization and her subsequent conduct at the jail.  Thus, we overrule
Johnson’s third point.

Reasonable Doubt Instruction

          Johnson contends in her fourth point
that she suffered egregious harm because the court failed to instruct the jury
that it could not consider evidence of extraneous crimes or bad acts unless
such crimes or bad acts were shown beyond a reasonable doubt.

          Article 37.07, section 3(a) requires
such an instruction in the punishment charge regardless of whether the
defendant requests it or objects to its omission.  See Huizar v. State,
12 S.W.3d 479, 484 (Tex. Crim. App. 2000).  Because Johnson did not request
such an instruction or object to its omission, she must show egregious harm.  See
Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).

          Texas courts have concluded that
egregious harm has not been shown because of the omission of a reasonable doubt
instruction when: (1) the defendant did not challenge the sufficiency of the
evidence connecting him to the extraneous conduct at trial and/or on appeal; see
McClenton v. State, 167 S.W.3d 86, 98 (Tex. App.—Waco 2005, no pet.); Bolden
v. State, 73 S.W.3d 428, 432 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d); Arnold v. State, 7 S.W.3d 832, 835 (Tex. App.—Eastland 1999,
pet. ref’d); (2) the evidence connecting the defendant to the extraneous
conduct is “clear-cut”; see Allen v. State, 47 S.W.3d 47, 52-53 (Tex.
App.—Fort Worth 2001, pet. ref’d); and (3) the punishment assessed is at the
low end or in the middle of the available punishment range and/or significantly
less than sought by the prosecution; see Tabor v. State, 88 S.W.3d 783,
789 (Tex. App.—Tyler 2002, no pet.); Bolden, 73 S.W.3d at 432; Allen,
47 S.W.3d at 53; Arnold, 7 S.W.3d at 835.[3]

          The evidence of extraneous conduct at
issue here consists of: (1) Johnson’s “manipulation of her medical condition”
(as stated in her brief); (2) a hospital lab test result showing that Johnson
had marihuana in her system when she was hospitalized; and (3) a test result
showing that her blood alcohol concentration was 0.03 grams when she was
hospitalized.

          With one exception, Johnson did not
cross-examine the State’s witnesses who presented testimony about her
hospitalization and subsequent conduct at the jail.  Each of the witnesses
positively identified Johnson as the person about whose conduct they were
testifying.  Johnson did not and does not challenge the accuracy of the test
results.  Her trial counsel briefly cross-examined the emergency department
physician about his failure to seek a psychiatric evaluation.  Although the
State placed great emphasis on the extraneous conduct in its closing argument, Johnson’s
counsel did not mention it.  The prosecutors both asked the jury to assess the
maximum punishment of twenty years.  As indicated however, the jury assessed
punishment at eleven years.

          Therefore, because Johnson did not
challenge the sufficiency of the evidence connecting her to the extraneous
conduct at trial and does not on appeal, because the evidence connecting her to
the extraneous conduct is “clear-cut,” and because her sentence is in the
middle of the available punishment range and almost half that sought by the
prosecution, we conclude that she did not suffer “egregious harm” from the court’s
failure to include a reasonable doubt instruction in the punishment charge.  See
McClenton, 167 S.W.3d at 98; Tabor, 88 S.W.3d at 789; Bolden,
73 S.W.3d at 432; Allen, 47 S.W.3d at 52-53; Arnold, 7 S.W.3d at
835.  Accordingly, we overrule Johnson’s fourth point.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring in the result without a separate opinion)

Affirmed

Opinion delivered and
filed November 9, 2005

Publish

[CR25]

 









[1]
          Article 38.36 applies to
“prosecutions for murder” and allows for the admission of “testimony as to all
relevant facts and circumstances surrounding the killing and the previous
relationship existing between the accused and the deceased, together with all
relevant facts and circumstances going to show the condition of the mind of the
accused at the time of the offense.”  Tex.
Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005).

 





[2]
              Wayne testified that they married in September 2001.





[3]
              This listing is not intended
to be exhaustive.








d sustain the point of error, set aside the order, and grant habeas corpus relief. 
 

                                                                       BILL VANCE
                                                                       Justice

Dissenting opinion delivered and filed August 9, 2000
Publish