In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00092-CR
______________________________


VINCENT BERNARD DICKEY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 22,654


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            While part of an inmate work crew


 in Greenville working under the supervision of jailer
Dixon Latham, Vincent Bernard Dickey stripped off his "jail stripes" and ran away from the work
crew in his T-shirt and boxer shorts. Dickey found some clothes at his mother's house and managed
to elude authorities until the following day, when he was found hiding in a closet in the vacant side
of a local duplex. As a result of the incident, Dickey has now been convicted of escape.


 See Tex.
Pen. Code Ann. § 38.06(a), (c).
            On appeal, Dickey (1) argues the evidence was legally and factually insufficient to prove
various elements of the offense as set out by the Texas Penal Code, (2) asserts there was a material
variance between the indictment and the proof, and (3) claims the jury charge failed to include an
essential element of the offense. We disagree and affirm the judgment of the trial court.
            Of Dickey's three points of error, the first and second, briefed together, present seven,
different, substantive issues. Six of those issues challenge the evidentiary sufficiency of different
elements of the offense, while the seventh issue concerns an alleged material variance between the
indictment and the proof at trial. In recent years, this Court has repeatedly warned litigants not to
combine multiple issues into a single point of error, thereby risking our overruling the composite
point of error as multifarious. See, e.g., Newby v. State, 169 S.W.3d 413, 414 (Tex.
App.—Texarkana 2005, no pet.); Harris v. State, 133 S.W.3d 760, 764 n.3 (Tex. App.—Texarkana
2004, pet. ref'd); Parra v. State, 935 S.W.2d 862, 875 (Tex. App.—Texarkana 1996, pet. ref'd). In
the interest of justice, however, we decline the opportunity to overrule Dickey's first two points of
error on the basis of them being multifarious.
(1)       The Evidence Is Sufficient to Support the Conviction
            There are three elements in the offense of escape: "(1) escape (2) from custody (3) after
having been arrested for, charged with or convicted of an offense." Scott v. State, 672 S.W.2d 465,
466 (Tex. Crim. App. 1984); see also Tex. Pen. Code Ann. § 38.06 (Vernon 2003). The Texas
Penal Code defines "escape," as that term is used in Chapter 38, as an "unauthorized departure from
custody or [a] failure to return to custody following [a] temporary leave for a specific purpose or
limited period . . . ." Tex. Pen. Code Ann. § 38.01(2) (Vernon 2003). The term "custody" is
defined as being "under restraint by a public servant pursuant to an order of a court . . . ." Tex. Pen.
Code Ann. § 38.01(1)(A) (Vernon 2003). 
            In reviewing the legal sufficiency of the evidence, we examine the relevant evidence in the
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). In reviewing for factual sufficiency, we view all the evidence in a neutral
light and determine whether the evidence supporting the verdict is too weak to support the finding
of guilt beyond a reasonable doubt or whether evidence contrary to the verdict is strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d
654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App.
2004)).
            In the case now on appeal, the State's indictment, which was substantially tracked by the jury
charge, alleged four alternative theories of how Dickey escaped from custody:
Theory 1:  Dickey escaped from the custody of Latham after being convicted of felony theft
in cause number 15,696.
 
Theory 2:  Dickey escaped from the custody of Latham after being convicted of the felony
of delivery of a controlled substance in cause number 15,818.
 
Theory 3:  Dickey escaped from the custody of Latham after being convicted of the felony
of burglary of a habitation in cause number 15,828.
 
Theory 4:  Dickey escaped from the custody of Latham after being convicted of an offense
(an unnamed misdemeanor or felony) for which Dickey was confined to a secure
correctional facility.
 
If the State's evidence is legally and factually sufficient under any of these alternative theories, we
must overrule Dickey's sufficiency challenge. See Sorto v. State, 173 S.W.3d 469, 472 (Tex. Crim.
App. 2005) (where jury charge authorizes conviction on alternative theories, verdict of guilt will be
upheld if evidence was sufficient on any of theories).
            A. The Evidence Was Sufficient to Show Dickey Was in Custody
            In his first and second issues, Dickey contends the evidence is legally and factually
insufficient to prove he was in custody at the time he escaped. The evidence at trial showed Latham,
a jailer


 for the Hunt County Sheriff's Department, had taken Dickey and several other inmates from
the jail as part of a work crew April 17, 2004. As he had many times before, Latham took this
particular group to the Greenville Police Department's satellite office. Latham testified:
The men pretty well knew their jobs. Some were weed eaters. Some were mowers. 
We had two mowers that needed repair. Blades replaced on it. The big mower that
Vincent Dickey drove was on the trailer and this was too small a lot to roll it off for
it. So he got off ostensibly to pick up trash in that site.
 
When time came for the work crew to return to the jail, Dickey had vanished.


 
            Dickey's parole officer, Tina Shepard, testified Dickey was being held in the Hunt County
Jail on a parole revocation warrant on the day he disappeared from the work crew. Shepard also told
the jury that the parole revocation warrant related to Dickey's twenty-five-year prison sentences in
each of three cases (cause numbers 15,696, 15,818, and 15,828), sentences which Dickey had not
yet discharged. The jury also received copies of the judgments of conviction in those cases, as well
as a copy of Dickey's post-arrest confession in which he admitted to (a) being locked up on the parole
revocation warrant, (b) being taken out of the jail as part of a trustee work crew, (c) running away
from the work crew, and (d) removing his "jail stripes" as he ran. Dickey also admitted in that
statement that he had "spent most of the night [between the day of his escape and the day of his
recapture] on the tracks back down in the woods. I was debating on coming back and turning myself
in because I kept thinking about how my mama cried when I was there at [her] house." 
            On appeal, Dickey argues that the three judgments of conviction in cause numbers 15,696,
15,818, and 15,828 may not suffice as the underlying "court orders" on which Dickey had been in
custody at the time of the escape. Dickey contends there must be an additional order from the trial
court specifically authorizing Latham—or, alternatively, naming any duly appointed jailer or sheriff's
deputy—to take custody of Dickey. We disagree that our law requires such an order.
            In general, judgments of conviction in Texas—at least those resulting in
imprisonment—direct the sheriff of the convicting county to "promptly and safely" deliver the
convicted felon to the Institutional Division of the Texas Department of Criminal Justice ("the
Department"), where the convicted felon is to be confined for the term specified in the trial court's
judgment. Thus, the Department's authority to take "custody" of the felon arises from the trial court's
original judgment of conviction. If a felon is released to parole or mandatory supervision, the felon
remains subject to the reasonable and lawful conditions of release imposed by the Department. This
is because release on parole or mandatory supervision is not a form of clemency. See Tex. Gov't
Code Ann. § 508.002 (Vernon 2004). Instead, parole allows the releasee to serve the remainder of
his or her sentence outside the walls of a prison under the supervision of the Department's Pardons
and Paroles Division. Tex. Gov't Code Ann. § 508.001(6) (Vernon 2004). If the felon violates the
terms of those conditions, the Board of Pardons and Paroles ("the Board") may issue a parole
revocation warrant. The Board's authority to issue such a warrant is statutory, see Tex. Gov't Code
Ann. § 508.251 (Vernon 2004), but the Board's ability to exercise such power is contingent on the
Department, and thus the Board, first having been granted custody of the felon by a trial court's
underlying judgment of conviction. Thus, the root authority for any parole revocation warrant is the
original judgment of conviction itself. It necessarily follows that Dickey's argument on appeal—that
an underlying judgment of conviction could not serve as a "court order" by which Latham had lawful
custody of Dickey—is meritless. Latham had custody of Dickey pursuant to the parole revocation
warrant, which in turn relied on the underlying judgments of conviction. Accordingly, using the
standards of review set forth above, we conclude the evidence is legally and factually sufficient to
show Dickey was under restraint by Latham, a public servant, pursuant to the trial court's judgments
of conviction in cause numbers 15,696, 15,818, and 15,828 at the time of Dickey's escape. It was
unnecessary for those judgments to specifically authorize Latham, by name, to take Dickey into
custody.
 
            B. The Evidence Was Sufficent to Show Dickey Was Incarcerated on a Felony
            In his third and fourth issues, Dickey contends the evidence is legally and factually
insufficient to show he was incarcerated


 on any of the three felonies alleged in the indictment at the
time he escaped. We disagree.
            Shepard testified she had been supervising Dickey's parole for each of his twenty-five-year
sentences in cause numbers 15,696, 15,818, and 15,828 before Dickey was placed in the Hunt
County jail. According to Shepard, before his escape Dickey had been in jail pursuant to parole
revocation warrants issued in connection with those underlying felony convictions. Shepard also
told the jury that Dickey had not finished serving his sentence in any of the three underlying felony
convictions specifically alleged in the indictment. As discussed above, copies of those underlying
judgments had been admitted into evidence, establishing Dickey's convictions for burglary of a
habitation, possession of cocaine, and felony theft, each of which resulted in a twenty-five-year
sentence. And, in his own custodial confession, Dickey expressed remorse for leaving the work
crew, an expression that inferentially acknowledged Dickey knew his participation in the work crew
was limited to staying at the work site and performing the duties assigned by Latham. Accordingly,
using the review standards outlined above, we believe the jury could rationally have concluded
Dickey was in Latham's custody due to any of three underlying felonies at the time Dickey escaped. 
Cf. Lawhorn v. State, 898 S.W.2d 886, 890 (Tex. Crim. App. 1995) (offense complete when
appellant ran from jail transport van); Harrell v. State, 743 S.W.2d 229, 230–31 (Tex. Crim. App.
1987) (appellant escaped from VA hospital off prison grounds; conviction affirmed); Dutton v. State,
874 S.W.2d 206, 208–09 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (evidence showed
appellant had not yet discharged twenty-year sentence at time of escape; conviction affirmed).
            C. We Need Not Address Dickey's Confinement in a Secure Correctional Facility
            In his fifth and sixth issues, Dickey contends the evidence is legally and factually insufficient
to show he was confined in a secure correctional facility at the time of his escape. But because the
evidence is legally and factually sufficient under any of the State's first three theories of prosecution,
we need not, and do not, address whether the evidence is sufficient to sustain Dickey's conviction
under the fourth theory of the offense outlined by the indictment. See Sorto, 173 S.W.3d at 472.
(2)       There Is No Material Variance Between the Indictment and the Proof
            In his seventh issue, Dickey contends that a material variance exists between the indictment
and the proof offered at trial. Dickey asserts that—because the underlying felony judgments in cause
numbers 15,696, 15,818, and 15,828 did not specifically designate and authorize Latham, or any
Hunt County jailer, to take custody or supervision of Dickey, yet the proof at trial (those same
judgments) authorized only the Hunt County Sheriff and officials of the Department to take custody
of Dickey—a material variance exists between the indictment and the proof, and Dickey should
receive an acquittal.
            "A 'variance' occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial." Hart v. State, 173 S.W.3d 131, 144 (Tex. App.—Texarkana 2005,
no pet.) (quoting Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or
as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial
rights' is immaterial." Id. (quoting Gollihar, 46 S.W.3d at 247–48; and referencing Rojas v. State,
986 S.W.2d 241, 246 (Tex. Crim. App. 1998)).
To determine whether a defendant's "substantial rights" have been prejudiced, we
must consider two questions: whether the indictment, as written, informed the
defendant of the charge against her or him sufficiently to allow such defendant to
prepare an adequate defense at trial, and whether prosecution under the deficiently
drafted indictment would subject the defendant to the risk of being prosecuted later
for the same crime.

Id. (citing Gollihar, 46 S.W.3d at 248; Brown v. State, 159 S.W.3d 703, 709 (Tex. App.—Texarkana
2004, pet. ref'd)).
            Dickey's argument is premised on the assumption that Latham could not have lawful custody
of Dickey solely pursuant to those underlying judgments of conviction; Dickey argues a second order
from the trial court is necessary.



            As we have held above, no such separate order was necessary. While acting as a jailer for
Hunt County, Latham had lawful and proper custody of Dickey via the Board's parole revocation
warrant, an entity with such warrant authority pursuant to its own custodial authority over Dickey
as granted by the three underlying judgments of conviction. Thus, because the proof offered at trial
showed Latham had proper custody of Dickey, there was no variance, material or otherwise, between
the indictment's allegation and the proof offered at trial. Both were to the effect that Latham had
proper custody of Dickey.
            We overrule Dickey's first and second points of error.
(3)       The Jury Charge Did Not Omit an Essential Element of the Offense
            In his final point of error, Dickey contends the trial court's charge to the jury failed to submit
an essential element of the offense. Dickey asserts the charge "failed to distinctly set out in the
application paragraph that Dixon Latham, a public servant, must have had custody of Appellant
pursuant to a court order . . . ." 
            When jury charge error is claimed, we must determine first whether there was error in the
charge. McNatt v. State, 152 S.W.3d 645, 654 (Tex. App.—Texarkana 2004, pet. granted). If error
is found, then we evaluate that error under the appropriate harm standard set forth in Almanza. 
Brown v. State, 122 S.W.3d 794, 803–04 (Tex. Crim. App. 2003); see Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The standard of review for errors in the jury charge
depends on whether the defendant properly objected. Almanza, 686 S.W.2d at 172. If a proper
objection was raised, reversal is required if the error is "calculated to injure the rights of defendant." 
Id. In other words, an error that has been properly preserved is reversible unless it is harmless. Id.
at 171. If a defendant does not object to the charge, reversal is required only if the harm is so
egregious the defendant has not had a fair and impartial trial. Rudd v. State, 921 S.W.2d 370, 373
(Tex. App.—Texarkana 1996, pet. ref'd). In this case, Dickey did not raise this objection to the trial
court; he must, therefore, show egregious harm if indeed we find error in the charge.
            The elements of the offense of escape are "(1) escape (2) from custody (3) after having been
arrested for, charged with, or convicted of an offense." See Tex. Pen. Code Ann. § 38.06 (Vernon
2003); Scott, 672 S.W.2d at 466; Russell v. State, 90 S.W.3d 865, 870 (Tex. App.—San Antonio
2002, pet. ref'd); Crowder v. State, 812 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1991, pet.
ref'd). The trial court's charge instructed the jury that the term "custody," as it was used throughout
the charge, meant "under arrest by a peace officer or under restraint by a public servant pursuant to
an order of a court of this state or another state of the United States." Later, in a subsequent
application paragraph, the trial court instructed the jury:
 
Now, if you find from the evidence beyond a reasonable doubt that on or
about the 17th day of April, 2004, in Hunt County, Texas, the defendant, Vincent
Bernard Dickey, did then and there escape from the custody of Dixon Latham, a
public servant, after being convicted [of] a felony offense of Theft of Property of the
value of $750 or more but less than $20,000 in Cause 15,696; and/or after being
convicted for a felony offense of Unlawful Delivery of a Controlled Substance,
namely Cocaine, in Cause 15,818; and/or after being convicted for a felony offense
of Burglary of a Habitation in Cause 15,828; or at the time the said Vincent Bernard
Dickey was confined in a secure correctional facility, namely the Hunt County jail,
then you will find the defendant guilty as charged in the indictment.
            Reading the application paragraph in conjunction with the definition of "custody" provided
earlier in the charge, it is clear that the charge did not authorize the jury to convict Latham unless
it found (1) that Dickey had escaped, (2) that Dickey had previously been under restraint by Latham,
who was a public servant acting pursuant to a court order, and (3) that Dickey had been in custody
in connection with any or all of three listed felony convictions. Because there was no missing
element of the offense in the trial court's jury charge, the charge was correct in that respect. Harm
analysis is unnecessary.
            We overrule Dickey's final point of error and affirm the trial court's judgment.
 
 
 
                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          February 23, 2006
Date Decided:             March 14, 2006

Publish



n for truthfulness, as well as testimony
specifically rebutting the defensive theory that D.G. was coached. 

 This point of error is overruled. 

 D. Plausible Trial Strategy Explained Counsel's Failure to Object to "Improper
Opinion/Hearsay Statements"


 Alberts next complains that the following testimony from D.G.'s mother during redirect was
an improper opinion or hearsay:

 Q. [By the State] You want to believe that he wouldn't do these things
to your son, but the fact is, he did them, right?

 

 A. [By D.G.'s mother] Correct. 


Once again, the record is silent as to why counsel failed to object to this testimony. Thus, Alberts
has failed to rebut the presumption that his counsel's decision was in some way reasonable. Mata
v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). We can assume it was merely to prevent
drawing the jury's attention to the testimony. Thus, we overrule this point of error as well. 

IV. Error in Exclusion of Evidence and Bias at Punishment 

 We review the admission of evidence for whether there is an abuse of discretion such that
the trial judge's decision lies outside "the zone of reasonable disagreement." Berry v. State, 179
S.W.3d 175, 179 (Tex. App.--Texarkana 2005, no pet.). The trial court must first determine if the
evidence is relevant under Rule 401. Alberts argues that the trial court erred by failing to permit him
to testify that he was impotent at the punishment phase. Alberts correctly declares that "[r]elevant
evidence in the punishment context is that which helps the jury tailor the sentence to the particular
offense and tailor the sentence to the particular defendant." Najar v. State, 74 S.W.3d 82, 86-87
(Tex. App.--Waco 2002, no pet.). He contends evidence of impotence is a mitigating factor which
is not "per se inadmissible." 

 As the trial court explained, Alberts could have committed the acts for which he was found
guilty despite impotence, the condition had no bearing of whether Alberts could or would reoffend,
and ultimately would not help the jury determine his appropriate sentence. We hold the trial court
did not abuse its discretion in this matter. Alberts further believes the trial court demonstrated bias
because the trial court explained the reason for its ruling in the presence of the jury. After reviewing
the record, we do not find the trial court failed to maintain an attitude of impartiality, acted as an
advocate for the State, or otherwise exhibited bias in explaining to trial counsel why Alberts's
impotence was irrelevant. As part of its explanation, the trial court remarked that if Alberts was
attempting to introduce impotence as evidence of mitigation, he should have done so during the
guilt/innocence phase. Alberts contends this constituted a comment by the trial court on Alberts's
failure to testify during the guilt/innocence phase. We cannot reason that such a comment harmed
Alberts during the punishment phase, especially since he testified during punishment. These points
of error are overruled. 

 Finally, Alberts attempted to introduce testimony from psychologist Joann Ondrovik. After
a preliminary questioning took place in order to establish Ondrovik's qualifications as an expert,
Alberts's counsel asked Ondrovik if she had evaluated whether Alberts would be a good candidate
for probation (community supervision) and Ondrovik responded that she had. Alberts's counsel then
was able to utter, "What was your -- ," at which point he was interrupted by the State's objection
urging that Ondrovik was "not in the business of deciding who gets probation." The trial court
allowed the State to take Ondrovik on voir dire; during this, the State attempted to establish that
Ondrovik cannot "ethically" determine whether a sex offender is cured "because you can't predict"
such outcomes. The trial court did not allow Ondrovik to testify whether Alberts would be at risk
for reoffending. Throughout this process, Alberts's counsel neither elicited an opinion from
Ondrovik regarding Ondrovik's opinion as to whether Alberts would be a good candidate for
community supervision, nor was there any other offer of evidence of that nature presented. Although
one might presume that the interrupted question Alberts was posing to Ondrovik concerned whether
she considered Alberts to be a good candidate for community service, that is not an absolutely
ironclad presumption. The only way this Court is able to definitively ascertain the nature of the
evidence which Alberts apparently intended to present is by reading Alberts's brief on appeal. To
preserve error concerning a trial court's exclusion of evidence, the substance of the excluded
evidence must be shown by an offer of proof unless it is apparent from the context of the questions
asked. Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2); Mays v. State, 285 S.W.3d 884, 889 (Tex.
Crim. App. 2009). Here, we conclude that the evidence that Alberts was seeking to elicit from
Ondrovik's answer was not apparent from the question fragment spoken by Alberts's counsel. Thus,
the issue has not been preserved for our review. Alberts's last point of error is overruled. 

V. Conclusion 

 Because we find that Alberts was subjected to multiple punishments arising out of one act
involving D.G., we reverse the trial court's judgment finding him guilty of indecency with a child
by exposure under cause number 22305 and render a judgment of acquittal. The trial court's
remaining judgments under this cause number are affirmed.





 Bailey C. Moseley

 Justice



CONCURRING OPINION


 It appears to me that the error in excluding Dr. Ondrovik's testimony was preserved for
appellate review. After qualifying the psychologist concerning her education and experience as one
who has worked with over 1,000 sexual offenders, the defense attorney established that Ondrovik
had assessed and evaluated the defendant. She explained the tests used for the evaluation and then
the defense attorney asked: "Did you evaluate Mr. Alberts as to whether or not he'd be a good
candidate for probation? She answered that she did. The next, interrupted question, was, "What was
your -- ." 

 At that time the State began a series of objections, interruptions, and colloquy with the trial
court that continued for several typewritten pages in the record. The State objected that it was not
the expert's decision whether or not probation was proper and that she had a financial interest in
supervising sexual offenders. The defense attorney stated to the court that he was trying to elicit
testimony from the witness revealing the result of her evaluation of Alberts for probation. At that
time the trial court stated the testimony would be allowed, whereupon the State told to the court,
"we're going to -- can I take this witness on voir dire?" 

 During the voir dire examination the State continually suggested the witness could not
ethically testify whether or not a sex offender would reoffend. At the end of this voir dire the State
requested the trial court exclude Ondrovik's testimony "that this person is not at risk to reoffend."
Once again the defense attorney asked that the expert witness be allowed to "finish her testimony
she started, as it relates to her evaluation of him and whether or not he would be a good candidate
for probation." Apparently changing its mind, the trial court agreed with the State and ruled "her
testimony on this matter will not go any further than what -- where we are right now." The defense
attorney objected to the ruling. 

 A party whose evidence has been excluded must make an offer of proof at which time the
substance of the evidence was made known to the court, or was apparent from the context within the
questions asked. Tex. R. Evid. 103(2).

 The record demonstrates, despite the continued interruptions, that defense counsel presented
to the trial court the substance of the evidence the expert would offer--she had evaluated Alberts
and was prepared to present evidence of whether he would be a suitable candidate for probation. 
Even if the offer had not explicitly apprised the court of the substance of the testimony, the questions
asked and the sequence of events left nothing to the imagination--the evidence sought to be
presented was readily apparent within the questions asked. 

 The State's brief cites this Court's opinion in Hardin v. State, 20 S.W.3d 84 (Tex.
App.--Texarkana 2000, pet. ref'd), which held testimony concerning a defendant's "suitability for
probation" is generally inadmissible, but was proper to rebut the defendant's evidence. Id. at 90. 
But the State failed to acknowledge the more recent Texas Court of Criminal Appeals opinion which
specifically held that properly qualified witnesses may offer evidence of a defendant's suitability for
probation (community supervision). Ellison v. State, 201 S.W.3d 714, 717 (Tex. Crim. App. 2006)
(allowing a probation officer to testify to the defendant's suitability for probation (community
supervision)). (8) 

 The expert witness was in court prepared to testify; her qualifications were not challenged; 
she had examined Alberts to determine if he would be a candidate for probation (community
supervision); the trial attorney explained several times that was the subject of her testimony; the trial
court clearly understood the issue presented and excluded the evidence. The fact that she did not
utter the words that she thought he was either a good or a bad candidate is, in this context, irrelevant;
whatever her expert opinion, whether he was a suitable candidate for community supervision or not,
the evidence was admissible. ("Today's decision gives equal opportunity to the State and a
defendant to put on testimony of the defendant's suitability for community supervision." Id. at 722.) 
I believe the issue was preserved, and the trial court erred in excluding the testimony.

 Was the error harmful and reversible? What is the likelihood that the jury would have
granted Alberts community supervision if the expert's testimony had been properly allowed? An
examination of the entire record reveals very damning evidence. Alberts was found guilty by this
jury of committing several acts of sexual assault on young children in his family. With or without
expert testimony, convincing a jury, which has found a defendant guilty of numerous acts of sexual
assault on children, to release him on community supervision is a daunting task. While I believe the
evidence was admissible, I would further find that its exclusion had no substantial and injurious
effect or influence in determining the jury's verdict. Taylor v. State, 268 S.W.3d 571, 592 (Tex.
Crim. App. 2008). Consequently, it is not a reversible error. 

 I concur with the judgment reached in the majority opinion. 



 Jack Carter

 Justice


Date Submitted: November 6, 2009

Date Decided: December 11, 2009


Publish

1. The State tried Alberts for aggravated assault of K.R. and indecency with D.G. in a single
trial. See our opinion in cause number 06-09-00058-CR for disposition of Alberts's points of error
involving K.R. 
2. Rangel v. State, 179 S.W.3d 64, 70 (Tex. App.--San Antonio 2005, pet. ref'd).
3. The State does not dispute the two convictions were the result of the same act. 
4. Other nonexclusive factors considered when determining whether the Legislature intended
multiple punishments include whether the offenses are contained within the same statutory section,
whether they are phrased in the alternative, whether they are named similarly, and whether the
offenses have common punishment ranges. Ervin v. State, 991 S.W.2d 804, 814 (Tex. Crim. App.
1999). 
5. 224 S.W.3d 823 (Tex. App.--Texarkana 2007, no pet.).
6. 129 S.W.3d 242 (Tex. App.--Texarkana 2004, pet. ref'd).
7. The statement that "[s]he told me the truth" is something of a half-breed which could be
construed to be contained in two of Alberts's objections to his trial counsel's performance, but only
tangentially to both. One observes that this statement was nonresponsive to the question which was
posed by the State. Although the volunteered statement was objectionable in several respects, one
might surmise that an objection lodged to this blurted response might serve more to call the jury's
attention to it than withholding an objection to it. The lack of an objection to it may have been a
tactical decision on the part of trial counsel. 
8. The Texas Rules of Professional Conduct establish that a lawyer has a duty of candor toward
the tribunal. Tex. R. Prof'l Conduct 3.03, reprinted in Tex. Gov't Code Ann., tit. 2, subtit G
app. A (Vernon 2005). 


 (a) A lawyer shall not knowingly:

 . . . .

 (4) fail to disclose to the tribunal authority in the controlling jurisdiction
known to the lawyer to be directly adverse to the position of the client and not
disclosed by opposing counsel.